# United States Court of Appeals
## For the First Circuit

No. 19-2169

UNITED STATES OF AMERICA,

Appellee,

v.

BERNARD LINDSEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Lipez, and Kayatta,
Circuit Judges.

    Benjamin Brooks, with whom Good Schneider Cormier & Fried was
on brief, for appellant.
    Seth R. Aframe, Assistant United States Attorney, with whom
Scott W. Murray, United States Attorney, was on brief, for
appellee.

June 29, 2021

**LYNCH**, **Circuit Judge**.    State probation officers discovered a black case containing a variety of illegal narcotics during a probation compliance check in defendant Bernard Lindsey's apartment.  The police department obtained and executed a warrant to search his apartment, including the two cellphones found near Lindsey, for evidence of drug dealing.  Based on the evidence found, Lindsey was charged and convicted of possession with intent to distribute both cocaine, fentanyl, and methamphetamines.

In the district court, Lindsey challenged the warrant on the ground that there was no probable cause to search his cellphones.  On appeal he adds an argument that any evidence taken from the phones must be suppressed because the warrant did not adequately specify which files on the phones would be searched. We reject these arguments along with Lindsey's other arguments on appeal and affirm.

## I. Factual Background

In April 2018, Lindsey was living alone in an apartment in Concord, New Hampshire.  On April 16, his parole officer, Jonathan Boisselle, went to Lindsey's apartment with his partner, Benjamin Densmore, and two canine investigators to perform an unannounced home visit.  Boisselle approached the apartment quietly and at the closed door heard movement inside.  He knocked on the door and announced his presence several times.  Boisselle heard a phone go off from inside the apartment but still no one

opened the door. After two to three minutes, Lindsey opened the door and asked the officers to come in. Lindsey said he did not open the door immediately because he had been having trouble with his landlord due to bed bugs in the apartment.

Boisselle entered and saw another man, Bryson London, sitting on a couch near the entrance. He smelled marijuana and asked Lindsey if he had any illicit substances in the house. Lindsey denied having marijuana or any other substances. Boisselle next saw that London had a marijuana pipe between his legs and that there was a marijuana grinder on the couch. While taking possession of the grinder and pipe, Boisselle noticed a black case partially obscured by London's arm and other debris. Boisselle, believing the case might be a firearms case, immediately opened it and discovered bags of what appeared to be methamphetamines, cocaine, heroin, and fentanyl, as well as a scale, plastic bags, a metal spoon, tin foil and a plastic knife. The drugs were packaged in Ziploc bags and sandwich bags.

After opening the black case Boisselle and Densmore placed London and Lindsey under arrest. Boisselle patted Lindsey down and found a cellphone as well as approximately $3,400 in cash. Lindsey was employed as a server at the time making about $12 per hour but said that the money came from his tax return and that he had the money on his person because he did not believe in banks. The officers later learned that Lindsey had a bank account. The

officers seized both the phone on Lindsey's person and a second cellphone of the same make and model from the table near Lindsey.[1]

Boisselle next called the Concord Police Department ("CDP") for assistance. Before the Concord police arrived, New Hampshire Department of Corrections Investigator Christopher Ward searched the apartment. On the dresser in the bedroom he found latex gloves, breathing masks, and a container of what appeared to be Inositol powder, an over-the-counter substance which is sometimes used to cut drugs.

Shortly thereafter the CPD obtained a search warrant for Lindsey's apartment. Officer Brian Womersley's supporting affidavit stated that Lindsey had an "extensive criminal history" including "sales/possession of controlled drugs," that a witness had observed what appeared to be multiple drug sales out of a black Audi registered to Lindsey just five days earlier, and that four days earlier CPD officers, after responding to a report of possible drug activity, saw the black Audi parked in the area where suspected drug activity had been occurring. The affidavit also stated that Officer Boisselle had received reports from the Plymouth Police Department that Lindsey was selling drugs from his residence.

---

[1]     The phones were both LG model MP260s.

- 4 -

The warrant application went on to describe the various drugs and drug paraphernalia which had already been found in the apartment and that Lindsey had over $3,000 in cash in his pocket. It then stated that "[t]here were numerous cellphones within the apartment, and on Lindsey's person. Through [Womersley's] training and experience drug dealers will utilize several cellphones to conceal their drug business. They often change numbers, use 'burner phones' that are prepaid phones that they just keep changing once the minutes are used." Based on all of these facts the warrant application stated that "there [was] probable cause to believe that there [was] evidence of the crime of Sales of a Controlled Drug/Possession of Controlled Drugs . . . and that this evidence [was] located [in the places specified in the warrant]."

"Attachment A" to the warrant application stated the search would be for "Illicit Drugs," "Drug Paraphernalia," "Items, Documents, and Records relating to Drug Trafficking," "Items which are Drug Profits or Evidence of Drug Trafficking Proceeds or to be used to obtain Drugs," and "Any and All Electronic Devices" in order to "obtain[] any and all evidence . . . to corroborate Lindsey's criminal activity." Attachment A also explained that the "Addendum to Attachment A" would specify how the officers would search any seized electronic devices. However, someone mistakenly attached an Addendum which described procedures for searching

electronic devices only for investigations into violations of several child pornography statutes.

In executing the warrant, the officers found tin foil, a box of Ziploc bags, and a box of sandwich bags in the kitchen. The Ziploc and sandwich bags were of the same two types in which the drugs in the black case were packaged.

The government also searched the cellphones found on Lindsey's person and on the table in his living room. On one of these phones the government found "selfie" photos of Lindsey, a text message addressing Lindsey by his middle name, and a number of text messages from the preceding months suggesting that Lindsey had been engaged in drug dealing.[2]

The police also found a series of text messages between Lindsey and "Brysin" -- a misspelling of London's first name -- from the week preceding Lindsey's arrest. On April 9, 2018, Lindsey received a text message from another person with the phone number of someone named "Bryson." Lindsey saved the number under "Brysin." On April 11, Bryson texted Lindsey "Prices bro."

---

[2]  For example, on February 6, 2018, Lindsey received a text message that said "Hey did you still want to get some vyvanse? I filled my script..i was thinking about doing a trade if you're interested?" Another text from the same number said "Hey can you find me a half g today?" On March 19, 2018, someone texted Lindsey asking him if he could "cook [them] something to eat," which a law enforcement witness testified was slang for providing drugs. On March 22, 2018, someone named "Kahla" asked Lindsey if he could provide "another half today."

Lindsey asked him to call him on another cellphone number. That cellphone number was the number of the other phone seized in Lindsey's apartment. On the day of Lindsey's arrest, Bryson texted Lindsey at 9:33 AM asking if Lindsey could pick him up. Lindsey agreed and Bryson responded "Can you bring the whites with you please?" Officers later testified that "whites" is slang for cocaine.

## II. Procedural History

Lindsey was indicted on one count of Possession with Intent to Distribute Cocaine and Fentanyl under 21 U.S.C §§ 841(a)(1) and (b)(1)(C) and one count of Possession with Intent to Distribute Five Grams or More of Methamphetamine under 21 U.S.C. §§ 841(a)(1) and (b)(viii).

On January 2, 2019, Lindsey filed a motion to suppress the evidence seized from the searches of the two cellphones on the grounds that there was not a sufficient "nexus" between the cellphones and the drug trafficking offense to conclude that there was a "'fair probability that contraband or evidence of a crime [would] be found' within the cellphones." The government responded that the facts in the warrant provided a "substantial basis" for finding probable cause.

The district court heard argument on the motion on January 30, 2019.[3] The district court denied the motion to suppress "for the reasons set forth by the government."

After a two-day jury trial on April 16 and 17, 2019, the jury found Lindsey guilty on both counts. At trial the government introduced, over Lindsey's objection, a number of text messages taken from one of the cellphones which indicated that Lindsey had been selling drugs in the months before his arrest. Lindsey objected on the grounds that evidence of previous drug dealing was impermissible propensity evidence under Federal Rule of Evidence 404(b). The court overruled these Rule 404(b) objections, stating

> I think the cases seem pretty clear to me that
> in cases such as this where intent is the real
> focus of the case, that prior similar conduct
> is particularly relevant, has special
> relevance, and particular relevance to motive,
> intent to distribute, knowledge. Secondarily,
> of course, it provides background, completes

---

[3]    In discussing the scope of Lindsey's argument, the district court stated that Lindsey had "kind of an interesting hint of an argument" about whether the searches were overbroad in allowing searches of the entirety of both cellphones rather than only "communications, text messages, phone logs, [and] emails" but that the issue was not raised.

Lindsey's lawyer also raised the fact that the warrant application had included an attachment about searching electronic devices in child pornography cases rather than drug cases.

The district court also asked several questions of the government to ensure the issue of whether there was an "overly broad search [which] produced evidence of other crimes or other offenses that [the government was] then going to pursue based on this search" was not presented in this case. The government confirmed that issue was not presented and it had no intention of using the cell phone evidence for that purpose.

the narrative that the government's attempting . . . to prove.

The district court gave a limiting instruction to the jury stating that

> text messages suggesting that the defendant previously engaged in conduct similar to that charged in this case . . . may not be used to prove the defendant's character traits in order to argue or show that on a particular occasion the defendant acted in accordance with that character. . . . You may consider that evidence solely for the limited purpose of deciding whether the defendant had the state of mind or intent to distribute necessary to commit the crimes charged in the indictment. (Emphasis added.)

Lindsey also objected, without specifying on what grounds, to the prosecution's asking Officer Boisselle what prompted his visit to Lindsey's apartment and to the admission of the text message from Lindsey's girlfriend which addressed Lindsey by name and was used to prove ownership of the phone.[4] The district court did not rule on the first objection and overruled the second objection.

Twelve days after the verdict issued, on April 29, 2019, Lindsey filed a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, or in the alternative, for a new trial under Federal Rule of Criminal Procedure 33. Lindsey argued that the evidence was insufficient to sustain the jury verdict

---

[4] The text message appeared to be part of an interpersonal conflict between Lindsey and his girlfriend.

because the evidence did not show that the black case containing the drugs and drug paraphernalia belonged to Lindsey rather than to London or that Lindsey knew the black case contained drugs and drug paraphernalia.  The district court denied the motion on October 31, 2019, reasoning that there was adequate evidence for the jury to conclude that Lindsey was engaged in drug trafficking, that London was merely a customer, and that the black case belonged to Lindsey.

On November 7, 2019, the district court sentenced Lindsey to 80 months' imprisonment on both counts, to be served concurrently.  This timely appeal followed.

### III. Analysis

Lindsey makes several arguments on appeal. We address them in turn.

A. The Motion to Suppress

Lindsey's lead argument is that the trial court erred in denying his motion to suppress any evidence recovered from the cellphones.  Lindsey argues both that the warrant application failed to demonstrate a sufficient nexus between the suspected drug dealing and the cellphones and that the warrant was overly broad and failed to meet the particularity requirements of the Fourth Amendment.

In reviewing a motion to suppress, we review legal issues de novo and factual findings for clear error.  United States v.

Mumme, 985 F.3d 25, 35 (1st Cir. 2021). We review a determination of probable cause de novo and look only to the "'facts and supported opinions' set out within the four corners of the affidavit." United States v. Austin, 991 F.3d 51, 55 (1st Cir. 2021) (quoting United States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015)).

1. The Nexus Requirement

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A warrant application must demonstrate probable cause to believe that (1) a crime has been committed -- the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched -- the . . . 'nexus' element." United States v. Dixon, 787 F.3d 55, 59 (1st Cir. 2015) (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)). As to the nexus requirement, a court need only determine that there is a "'fair probability' -- not certainty -- that evidence of a crime will be found in a particular location" based on the totality of the circumstances. Id. at 60. The nexus between the alleged crime and place to be searched may be "inferred from the type of crime, the nature of the items sought, . . . and normal inferences as to where a criminal would hide [evidence of a crime]." United States

- 11 -

v. Rodrigue, 560 F.3d 29, 33 (1st Cir. 2009) (alteration in original) (quoting United States v. Ribeiro, 397 F.3d 43, 49 (1st Cir. 2005)).

Lindsey argues that there was no probable cause to believe there was evidence of drug dealing on the cellphones because the affidavit offered "no direct evidence" that the phones would contain evidence of any drug dealing and the "indirect" evidence was not strong enough to create a fair inference that there would be evidence of drug dealing on the cellphones. We disagree. There was substantial evidence presented in the warrant application and supporting affidavit that Lindsey had been engaged in drug dealing and that he had delivered drugs in his car to various locations. The affidavit also explained that Lindsey had more than one cellphone and that it is common for drug dealers to use multiple cellphones to conceal their drug business. This was enough to support a fair inference that the cellphones would contain evidence of drug dealing. See United States v. Adams, 971 F.3d 22, 32-33 (1st Cir. 2020) (explaining that presence of multiple cellphones combined with other evidence of drug dealing was sufficient to show probable cause to search five cellphones found in defendant's car); see also United States v. Hernandez-Mieses, 931 F.3d 134, 140-41 (1st Cir. 2019) (holding that district court did not err in concluding that "plain view" doctrine allowed

officers to seize cash, four cellphones, and gun found in kitchen because they were "common tools" used in drug dealing).

Lindsey argues that ruling against him will "advance[] a rule that automatically permits the search of any cellphone whose owner has been engaged in drug activity, even when there is no specific evidence that the phone was used to transact any illicit business, so long as the affidavit includes a generalized statement that drug dealers often use cellphones to conduct their business."[5] Contrary to Lindsey's argument, the warrant was not premised solely on the fact that Lindsey "engaged in drug activity." The warrant application stated that Lindsey had <u>multiple</u> cellphones and that using multiple phones is a common tactic used by drug dealers to conceal their drug business. Whether probable cause would have

---

[5] In making this argument Lindsey relies on <u>United States v. Roman</u>, 942 F.3d 43 (1st Cir. 2019), in which this court held that the district court did not err in concluding that the government's statement that drug dealers often store evidence of drug crimes in the home, without additional evidence that drugs might be found in the defendant's home, did not provide probable cause for a warrant to search the home. <u>Id.</u> at 50-52.

<u>Roman</u> is entirely distinguishable. In <u>Roman</u>, the court held that there was an insufficient nexus between the alleged drug dealing activity and Roman's home where the warrant application tended to support the inference that any evidence would "more likely . . . be found at the residence or business of another individual," the record did not support the government's assertions that Roman was an established drug dealer, and the warrant application "relie[d] on the testimony of only one informant . . . whose credibility as a source was not established." <u>Id.</u> at 51-54.

existed had there been only one phone and no evidence of active selling, we need not decide.

2. The Particularity Requirement

The Fourth Amendment requires that warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The purpose of the particularity requirement "is to prevent wide-ranging general searches by the police." United States v. Moss, 936 F.3d 52, 58 (1st Cir. 2019) (quoting United States v. Bonner, 808 F.2d 864, 866 (1st Cir. 1986)). "The particularity requirement demands that a valid warrant: (1) must supply enough information to guide and control the executing agent's judgment in selecting where to search and what to seize, and (2) cannot be too broad in the sense that it includes items that should not be seized." United States v. Kuc, 737 F.3d 129, 133 (1st Cir. 2013) (citing United States v. Upham, 168 F.3d 532, 535 (1st Cir. 1999)).

The government argues that Lindsey waived the particularity argument by failing to raise it in the district court. Lindsey contends that he did raise the argument both in his written motion to suppress and during the hearing on his motion. We agree with the government that Lindsey failed to preserve this argument and so under Federal Rule of Criminal Procedure Rule 12(b)(3) and (c)(3) the issue cannot be raised on

appeal absent a showing of good cause. Lindsey makes no attempt to show good cause for his failure to preserve this issue.

In general, legal arguments are preserved only when "raised squarely" in the district court. United States v. Peake, 874 F.3d 65, 72 (1st Cir. 2017) (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Loc. No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992)). "This rule 'requires litigants to spell out their legal theories face-up and squarely in the trial court; if a claim is "merely insinuated" rather than "actually articulated," that claim ordinarily is deemed unpreserved for purposes of appellate review.'" Mancini v. City of Providence ex rel. Lombardi, 909 F.3d 32, 46 (1st Cir. 2018) (quoting Iverson v. City of Bos., 452 F.3d 94, 102 (1st Cir. 2006)). Unpreserved legal arguments as to motions to suppress are unreviewable except upon a showing of good cause. Fed. R. Crim. P. 12(c)(3); United States v. Centeno-González, 989 F.3d 36, 48 (1st Cir. 2021); United States v. Crooker, 688 F.3d 1, 10 (1st Cir. 2012) ("There is the potential for both unfairness to the government and needless inefficiency in the trial process if defendants are not required, at the risk of waiver, to raise all of their grounds in pursuing a motion to suppress.").[6]

---

[6] Under First Circuit precedent Lindsey is not entitled to any form of review on this point. See Centeno-González, 989 F.3d at 48. But we note that there is a circuit split as to whether under Federal Rule of Criminal Procedure 12 defendants may still

- 15 -

Lindsey did not raise any particularity argument in his motion to suppress. He made only a nexus argument, stating that "[t]he totality of the circumstances . . . failed to supply probable cause" "because [the warrant did] not offer any reason why in these circumstances, these particular cellphones would hold any information pertinent to a drug transaction." The statement in Lindsey's motion to suppress that the warrant application failed to "describe what evidence [the officers] expected to find in the phones which would pertain to the distribution of controlled substances," unaccompanied by any mention of the particularity requirement, was not enough to raise or preserve the issue.

Nor was Lindsey's current argument squarely raised during the district court's hearing on the motion. Despite the district court's inquiry about exactly what the argument was, defense counsel never articulated the objection, now made on appeal, that the warrant was inherently deficient and no evidence seized pursuant to it was admissible because the warrant "failed to identify what items could be seized or viewed, thus violating the particularity requirement."

---

receive plain error review for arguments not made before the district court. Compare, e.g., United States v. Bowline, 917 F.3d 1227, 1229-38 (10th Cir. 2019), United States v. Daniels, 803 F.3d 335, 351-52 (7th Cir. 2015), and United States v. Anderson, 783 F.3d 727, 741 (8th Cir. 2015), with United States v. Sperrazza, 804 F.3d 1113, 1118-21 (11th Cir. 2015), United States v. Vazquez, 899 F.3d 363, 372-73 (5th Cir. 2018), and United States v. Soto, 794 F.3d 635, 655 (6th Cir. 2015).

Further demonstrating that the particularity argument was not squarely raised, no record was developed as to whether the warrant could have been narrowed or provided sufficient guidance to "control the agent's judgment in selecting what to take." United States v. Tiem Trinh, 665 F.3d 1, 15 (1st Cir. 2011) (quoting Upham, 168 F.3d at 535); see also Crooker, 688 F.3d at 10 (explaining the "unfairness" to the government when an untimely argument inhibits "full development of the factual record"). The record does not comprehensively explain how information is stored on modern cellphones or the ways in which the government can access that data without roaming through that phone. Nor did Lindsey request an evidentiary hearing on the motion. The argument is waived, Lindsey has not shown good cause under Rule 12 to consider the argument on appeal, and he is not entitled to plain error review.

## B. Sufficiency of the Evidence

Lindsey argues that the evidence at trial was insufficient to show that he "knowingly and intentionally possessed . . . a controlled substance with the specific intent to distribute" because there was "no evidence" to suggest that the black case containing drugs and drug packaging belonged to Lindsey rather than to London. He also asserts that even if there was evidence that Lindsey had just sold cocaine to London, that "does

not make Mr. Lindsey guilty of also possessing the fentanyl or the methamphetamine in the case."

We review de novo the district court's denial of a defendant's Rule 29 motion for a judgment of acquittal. United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014). "When evaluating the sufficiency of evidence, 'we draw the facts and all reasonable inferences therefrom in the light most agreeable to the jury verdict.'" Id. (quoting United States v. Williams, 717 F.3d 35, 37-38 (1st Cir. 2013)). The inquiry is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," and "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." United States v. Millán-Machuca, 991 F.3d 7, 17 (1st Cir. 2021) (alteration in original) (first quoting United States v. Bailey, 405 F.3d 102, 111 (1st Cir. 2005); and then quoting United States v. Rodríguez-Martinez, 778 F.3d 367, 371 (1st Cir. 2015)).

To make out a case of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a), the government must show that the defendant "knowingly and intentionally possessed, either actually or constructively, a controlled substance with the specific intent to distribute." United States v. Mendoza-Maisonet, 962 F.3d 1, 12 (1st Cir. 2020) (alteration in original) (quoting United States v. García-

Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007)). Constructive possession exists when a defendant has "dominion and control over the area where the contraband was found" and may be established by circumstantial evidence. Id. (quoting United States v. Padilla-Galarza, 886 F.3d 1, 5 (1st Cir. 2018)).

The evidence was sufficient for the jury to conclude that the black case and drugs it contained belonged to Lindsey. The text message evidence showed that someone named "Brysin" -- who the jury could readily infer was Bryson London -- had asked Lindsey five days before the arrest about his "[p]rices." And on the morning of the arrest, "Brysin" asked Lindsey to pick him up and bring "the whites," which is a commonly used term for cocaine. Lindsey had $3,643 dollars of cash on his person, which the jury could fairly infer were drug proceeds. The drugs in the black case were packaged in the same type of Ziploc and sandwich bags found elsewhere in Lindsey's apartment. The officers also found breathing masks, latex gloves, and an over-the-counter powder commonly used to cut drugs in Lindsey's bedroom. The jury could conclude beyond a reasonable doubt that Lindsey was selling drugs to London and that the case, which contained drug-packing materials and a wide range of drugs in distribution quantities, belonged to Lindsey rather than to London.

## C. The Admission of Text Messages Concerning Prior Drug Dealing

Lindsey argues that the trial court erred in admitting text messages which showed Lindsey engaging in past drug dealing because the messages were improper propensity evidence.

Federal Rule of Evidence 404(b)(1) forbids the admission of "[e]vidence of any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, such evidence "may be admissible for another purpose, such as proving motive, opportunity, [or] intent." Fed. R. Evid. 404(b)(2). Under the two-part test, if the court determines that the proffered prior act evidence has "'special' relevance, i.e., a non-propensity relevance," it then must consider whether the evidence should nevertheless be excluded under Rule 403 because "its probative value is substantially outweighed by a danger of . . . unfair prejudice." United States v. Henry, 848 F.3d 1, 8 (1st Cir. 2017) (first quoting United States v. Hicks, 575 F.3d 130, 142 (1st Cir. 2009); and then quoting Fed. R. Evid. 403). We review the admission of prior bad acts evidence for abuse of discretion. United States v. García-Sierra, 994 F.3d 17, 30 (1st Cir. 2021).

The district court did not abuse its discretion in admitting the text messages solely for the purpose of showing that Lindsey intended to distribute the drugs in the black case. Evidence of past drug dealing may be relevant to show that a

defendant in possession of drugs intended to sell those drugs. See id. at 230 (explaining that in cases charging possession with intent to distribute narcotics "we have 'often upheld the admission of evidence of prior narcotics involvement to prove knowledge and intent'" (quoting United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996))); Henry, 848 F.3d at 8-9 (collecting cases). In this case, the admitted text messages were part of a stream of drug trafficking communications in the months leading up to Lindsey's arrest, and the more recent messages showed that London was his customer. The inference to be drawn from the text messages is not the impermissible propensity one that because Lindsey had previously sold drugs, he must have had an intent to sell drugs in April 2018. Rather, the text messages show that Lindsey was presently in the business of selling drugs, which, in combination with the fact that Lindsey was found in the vicinity of distribution-quantity drugs, made it more likely that he intended to sell those drugs. The district court also twice gave the jury a limiting instruction to ensure that the text messages were not considered except to show Lindsey's intent to distribute the drugs in the black case.

## D. The Admission of Other Evidence

Lindsey argues that the admission of Officer Boisselle's testimony that the purpose of the probation visit was to investigate "concerns of noncompliance" with the terms of his

probation was unduly prejudicial because it "left [the jury] with the extremely prejudicial impression that officers showed up to Mr. Lindsey's home looking for drugs, and found exactly what they were looking for." Lindsey also argues that the admission of a text message from his girlfriend was unduly prejudicial "to the extent that [it] suggested that he was an ungrateful domineering boyfriend."

We review a district court's admission of allegedly prejudicial evidence under Federal Rule of Evidence 403 for abuse of discretion, "keeping in mind that '[o]nly rarely and in extraordinary compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgement concerning the relative weighing of probative value and unfair effect.'" United States v. Soto, 799 F.3d 68, 91 (1st Cir. 2015) (alteration in original) (quoting United States v. Vizcarrondo-Casanova, 763 F.3d 89, 94 (1st Cir. 2014)). Even if the district court abused its discretion, we reverse only if the "improperly admitted evidence likely affected the outcome of [the] trial." United States v. Acevedo-Hernández, 898 F.3d 150, 168 (1st Cir. 2018) (alteration in original) (quoting United States v. Torres-Galindo, 206 F.3d 136, 141 (1st Cir. 2000)).

As to Officer Boisselle's statement that there were "concerns of noncompliance with the terms of [Lindsey's] supervision," there is no basis to conclude that its admission

affected the outcome of the trial.  Boisselle did not claim that he suspected Lindsey of violating any particular term of his probation relevant to this case.  Boisselle also testified that he in fact observed several probation violations upon entering the apartment, undercutting any argument that mere "concerns of noncompliance" would have impacted the outcome of the case.

Further, the district court did not abuse its discretion in admitting the text message from Lindsey's girlfriend.  The text message was relevant to show Lindsey's ownership of the cellphone and the district court reduced any risk of prejudice by instructing the jury that "the content of the message is totally irrelevant to anything you're deciding, so don't consider it for any other purpose other than it's being offered on the limited purpose of your considering ownership of the phone."  See United States v. Moon, 802 F.3d 135, 144-45 (1st Cir. 2015) (explaining that limiting instructions "minimize[] the risk of prejudice").

## IV. Conclusion

Affirmed.

**-Concurring Opinion Follows-**

**KAYATTA**, <u>Circuit Judge</u>, **concurring**.  I write separately only to express my continued reservations about ongoing reliance on our holding in <u>United States</u> v. <u>Manning</u>, 79 F.3d 212, 217 (1st Cir. 1996), that evidence of prior drug distribution is admissible to prove the element of intent in a later drug distribution case. <u>See</u> <u>United States</u> v. <u>Henry</u>, 848 F.3d 1, 15 (1st Cir. 2017) (Kayatta, J., concurring) ("[T]he admission of evidence of a prior conviction to establish the 'intent' of the defendant in connection with the offense being tried can become indistinguishable from the admission of evidence of a prior conviction to prove a propensity to commit that type of crime.").

The lure of the propensity argument is admittedly seductive.  But propensity is "not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."  <u>Michelson</u> v. <u>United States</u>, 335 U.S. 469, 475-76 (1948) (footnote omitted).  And because "[a]lmost <u>any</u> bad act evidence simultaneously condemns by besmirching character and by showing one or more of motive, opportunity, [or] intent, . . . not to mention the other purposes of which this list is meant to be illustrative," the "list of exceptions in Rule 404(b), if applied mechanically, would overwhelm the central principle." <u>United States</u> v. <u>Hall</u>, 858 F.3d 254, 269 (4th Cir. 2017) (emphasis

in original) (quoting United States v. Miller, 673 F.3d 688, 696-97 (7th Cir. 2012)).

The opinion for the court in this case claims to distinguish the "impermissible propensity" inference (that "because Lindsey had previously sold drugs, he must have had an intent to sell drugs in April 2018") from a supposedly permissible inference (that because "Lindsey was presently in the business of selling drugs," it was "more likely that he intended to sell [the] drugs" with which he was found). I fail to see the relevant difference, at least as pertains to sales made months and weeks prior to the charged sale. With either formulation, the path of reasoning runs through propensity: His prior sales evidence a propensity making it more likely that he was planning to sell drugs on this occasion. See United States v. Davis, 726 F.3d 434, 442 (3d Cir. 2013) ("[T]he government must explain how [the evidence] fits into a chain of inferences -- a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference.")

Nevertheless, for two reasons I agree that the admission of the text messages does not call for upsetting the conviction: First, the text messages exchanged with London on the day of the arrest were properly admissible because they show London and Lindsey arranging the intended sale that is the subject of this case. They thus present no "uncharged conduct" issue. Second,

that evidence and the other evidence seized at the scene of the arrest make it overwhelmingly clear that Lindsey possessed the seized drugs with the intent to sell them. Therefore, any error in admitting evidence of other uncharged sales was harmless. And I otherwise agree with my colleagues' cogent disposition of the other issues on appeal.