# United States Court of Appeals
## For the First Circuit

No. 22-1415

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL CARDONA, SR., a/k/a RAFO,

Defendant, Appellant.

No. 22-1416

UNITED STATES OF AMERICA,

Appellee,

v.

ISAAC CARDONA,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Gelpí, Selya, and Lynch,
Circuit Judges.

Leslie Feldman-Rumpler for appellant Rafael Cardona, Sr.

Jane Elizabeth Lee for appellant Isaac Cardona.

Donald C. Lockhart, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

_____

December 7, 2023

_____

**LYNCH**, <u>Circuit Judge</u>.  Rafael Cardona Sr. and Isaac Cardona were convicted of two conspiracies, one to distribute and possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846, and another to distribute and possess with intent to distribute heroin, <u>id.</u>  Isaac Cardona, who is Rafael Cardona Sr.'s son, was also convicted of conspiracy to commit money laundering with intent to promote the carrying on of unlawful activity, 18 U.S.C. §§ 1956(a)(1), (h), on the ground that he had agreed to use the proceeds of unlawful activity -- conspiracy to distribute and possess with intent to distribute cocaine, 21 U.S.C. § 846, and distribution of cocaine, <u>id.</u> § 841(a)(1) -- to procure and resell the heroin in that conspiracy.

Rafael Cardona Sr. contends for the first time on appeal that one of his two conspiracy convictions must be vacated because the two convictions are multiplicitous in violation of the Double Jeopardy Clause.  Isaac Cardona argues for the first time on appeal that the money laundering statute under which he was charged is unconstitutionally vague, and so his conviction under that statute should be reversed.  Isaac Cardona also argues that insufficient evidence was presented at trial to establish beyond a reasonable doubt that he had the requisite intent for a promotional money laundering conviction, and that the court's failure to properly instruct the jury on this element of the offense was plain error.

- 3 -

We conclude that review is not available for the appellants' belated multiplicity and vagueness arguments because they are covered by Federal Rules of Criminal Procedure 12(b)(3) and 12(c)(3), which preclude appellate review of an untimely Rule 12(b)(3) claim, absent a showing of good cause. We further conclude that sufficient evidence was presented at trial to support Isaac Cardona's money laundering conviction, and that the concededly erroneous jury instructions as to his intent did not affect Cardona's substantial rights.

## I.

The following facts are drawn from testimony, surveillance footage, recorded communications between the appellants and other co-conspirators, and other evidence. Because one of the claims addressed in this opinion is a challenge to the sufficiency of the evidence, "we recount the facts in the light most favorable to the verdict." United States v. Paz-Alvarez, 799 F.3d 12, 18 (1st Cir. 2015) (citing United States v. Rodríguez-Soler, 773 F.3d 289, 290 (1st Cir. 2014)).

During 2015 and 2016, David Cruz was a drug dealer based in Westfield, Massachusetts, who obtained cocaine and heroin from sources in Mexico. On August 2, 2016, David Cruz received an eleven kilogram cocaine shipment from Mexican suppliers. Later that day David Cruz sold one and a half kilos of the cocaine to Isaac Cardona. Isaac Cardona paid Cruz a $14,980 cash down payment

on the $52,500 purchase price, with the understanding that he would pay Cruz the full amount once he had sold a kilo to a customer with whom he had previously agreed to transact.

On August 15, 2016, Isaac Cardona informed Cruz and Rafael Cardona Sr. that the customer with whom he had made arrangements had stolen the kilo of cocaine. Both Cardonas planned to track the customer down and retrieve the cocaine, but Cruz suggested to them an alternative plan. Cruz proposed that Isaac Cardona transport cash proceeds from Cruz's cocaine sales to California, use that money to buy a kilo of heroin, return with the heroin to Massachusetts, and then sell the heroin in small retail amounts, which would enable Isaac Cardona to pay off his debt to Cruz. Isaac Cardona agreed to this plan, and Cardona Sr. did not object to it. Cruz informed his heroin supplier of the planned purchase and gave Isaac Cardona the supplier's contact number so that Cardona could procure the heroin once he drove Cruz's car to California. The next day, Cruz showed Cardona how to operate the hidden compartment in his Nissan Juke in preparation for the trip. On August 17, both Cardonas discussed repairs that Cruz and Isaac Cardona were having performed on the Juke so that it would pass inspection. Cruz gave Isaac Cardona a box to take to California that contained $12,000 in cash, which was intended as a down payment for the heroin.

From August 20 through August 23, Isaac Cardona traveled to California in Cruz's Juke. During this time, Cardona Sr. encouraged his son by telephone to "[k]eep going over there. Tell [them] to . . . charge the horse more," euphemistically referring to heroin.[1] Cardona Sr. also gave Isaac advice on how he should act when meeting with the heroin suppliers.

Once in California, Isaac informed Cruz that he did not want to drive the Juke back to Massachusetts. Cruz told this to Cardona Sr. in the hope that Cardona Sr. could change his son's mind. Cardona Sr. stated that next time he would make the trip himself. Isaac Cardona parked the Juke, which contained the box of cash, at the airport and flew back to the East Coast.

Around this time, Cardona Sr. asked Cruz to front him a kilo of cocaine in return for $34,000, to be paid after distribution. Cruz declined on the ground that Isaac Cardona still owed him money. Cruz indicated, however, that he would sell cocaine to Cardona Sr. after Cruz had paid off his debt to his suppliers. He told Cardona Sr., "We will leave it for next time then. Say, yes, that I do not have it this time, but for the next one, yes." Cardona Sr. responded, "All right then, that's fine."

---

[1] The transcripts of intercepted phone calls between Cardona and Cardona Sr. were translated from Spanish. There is no challenge to the accuracy of the translations.

Soon thereafter, Cruz travelled to California to purchase heroin from his supplier and retrieve the Juke. Cruz completed the purchase, placed the substance he received -- later revealed to be fentanyl, rather than heroin -- in the Juke's hidden compartment, and arranged for a commercial car carrier to transport the vehicle back to Massachusetts. Cruz informed both Cardonas of his actions during this time. Cruz then flew back to the East Coast.

On September 9, unbeknownst to Cruz and the Cardonas, law enforcement intercepted the car carrier carrying the Juke, and the Juke was impounded. Law enforcement uncovered 994 grams of fentanyl in the hidden compartment of the vehicle.

On September 11, Cruz sent a message to Isaac Cardona: "I told you I picked up Lard and I wanted to know what have you thought about what we're going to do to pay." Cardona responded, "I'll work it and you grab all the profit and square it away." Cruz was arrested in Massachusetts on September 12.

In the days following Cruz's arrest, the Cardonas and Cruz's brother, ignorant of the seizure of Cruz's Juke, spoke about the need to find the Juke and recover the stashed heroin. Cruz's suppliers were demanding information from the Cardonas about Cruz and the location of the heroin. Cardona Sr. asked Isaac Cardona to coordinate with Cruz's suppliers about his efforts to locate the Juke, and Isaac made contact with them.

On November 2, one of Cruz's clients contacted Cardona Sr. Cardona Sr. explained that Cruz had been arrested, and stated, "What did you need? We could talk, man. . . . But uh . . . if [you need] anything we'll hit you up man. You understand? We're here. . . . What you need you know uh . . . write to me or something, to the phone or something, understand?"

## II.

On November 2, 2017, a federal grand jury returned a five count superseding indictment against Cardona, Cardona Sr., and three other co-conspirators, whose liability varied as to each of the conspiracy counts. Count One charged Isaac Cardona and Rafael Cardona Sr. with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. Count Two charged Isaac Cardona and Rafael Cardona Sr. with conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846. Count Five charged Isaac Cardona with conspiracy to commit money laundering with intent to promote the carrying on of unlawful activity, in violation of 18 U.S.C. §§ 1956(a)(1), (h), and alleged in particular that Isaac Cardona had agreed to purchase heroin in California to resell in Massachusetts with the knowledge that said financial transaction would involve the proceeds of unlawful narcotics distribution. The remaining counts did not charge the appellants.

On October 18, 2021, each of the Cardonas was convicted by jury trial on all counts. They timely appeal.

## III.

## A.

Cardona Sr. argues on appeal that one of his convictions should be vacated because the two conspiracies of which he was convicted, he says, were multiplicitous. "A prosecution is multiplicitous when the government charges a defendant twice for what is essentially a single crime . . . ." United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012) (citing United States v. Destefano, No. 98-2054, 1999 WL 1319192, at *1 (1st Cir. Nov. 22, 1999) (per curiam)). A multiplicitous prosecution violates the Double Jeopardy Clause's prohibition "against multiple punishments for the same offense." Id. (quoting United States v. Pires, 642 F.3d 1, 15 (1st Cir. 2011)).

The prosecution replies first that, because Cardona Sr.'s multiplicity claim is untimely, it cannot be reviewed by this court. Under Fed. R. Crim. P. 12(b)(3), a multiplicity objection "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(c)(3) provides that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider [the motion] if the party shows good cause."

- 9 -

Cardona Sr. concedes in his opening brief that his multiplicity claim is unpreserved, having been raised for the first time on appeal. He also does not dispute in his briefs the appellee's contention that the multiplicity claim could have been determined without a trial on the merits, nor does he advance a good cause for the motion's untimeliness.[2] Cardona Sr. argues nonetheless that the claim should be reviewed for plain error.

Our precedent precludes this argument. We have previously concluded that a legal argument that is untimely under Rules 12(b)(3) and (c)(3) "cannot be raised on appeal absent a showing of good cause." United States v. Reyes, 24 F.4th 1, 16 n.8 (1st Cir. 2022) (quoting United States v. Lindsey, 3 F.4th 32, 40-41 (1st Cir. 2021)). Where a defendant does not show good cause to consider an unpreserved Rule 12(b)(3) argument on appeal, he is

---

[2] Counsel for Cardona Sr. argued for the first time during oral argument that the multiplicity motion was not untimely because it could not have been determined prior to a trial on the merits. Because Cardona Sr. did not address this argument in his briefs despite the appellee's invocation of Rule 12(b)(3), it has been waived. See Reisman v. Associated Facs. of the Univ. of Me., 939 F.3d 409, 414 (1st Cir. 2019) ("[C]ontentions 'raised [] for the first time at oral argument . . . [are] waived.'" (alterations in original) (quoting Bernardo ex rel. M & K Eng'g, Inc. v. Johnson, 814 F.3d 481, 492 n.17 (1st Cir. 2016))); Bradley v. Vill. of Univ. Park, 59 F.4th 887, 897 (7th Cir. 2023) ("[A]ppellant's counterarguments [were] waived on appeal where he 'did not respond to [appellee's arguments] in his reply brief.'" (third alteration in original) (quoting Webb v. Frawley, 906 F.3d 569, 582 (7th Cir. 2018))).

"not entitled to plain error review."  Id. (quoting Lindsey, 3 F.4th at 42).[3]

Cardona Sr. contends that his new multiplicity argument has not been waived, because there is no indication that during trial he intentionally relinquished his right to object on multiplicity

---

[3]    Cardona Sr. contends that Reyes and Lindsey are not on point because they do not address the 2014 amendments to Rule 12.  This argument is unavailing.  Prior to the 2014 amendments, Rule 12's timeliness requirement was provided by Federal Rule of Criminal Procedure 12(e), which stated that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets under Rule 12(c) or by any extension the court provides.  For good cause, the court may grant relief from the waiver."  Fed. R. Crim. P. 12(e) (2013).  At the time this pre-2014 version of Rule 12 was in effect, this court held that plain error review was not available for an untimely Rule 12(b)(3) motion absent a showing of good cause.  See United States v. Walker, 665 F.3d 212, 228 (1st Cir. 2011).  While the 2014 amendments to Rule 12 removed use of the word "waiver" and transplanted the timeliness requirement from 12(e) to (c)(3), the amendments did not alter the meaning of the rule's timeliness requirement.  The advisory committee notes to the 2014 amendments explain that Rule 12(c)(3) "retains the existing standard for untimely claims.  The party seeking relief must show 'good cause' for failure to raise a claim by the deadline . . . ."  Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments; see United States v. Walker-Couvertier, 860 F.3d 1, 9 n.1 (1st Cir. 2017) ("Though the express reference to 'waiver' in Rule 12 was deleted in December of 2014, the amendment did not substantively change the rule." (citing Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments)); United States v. Bowline, 917 F.3d 1227, 1235 (10th Cir. 2019) ("[E]limination of the word waiver from [Rule 12] did not change the operative standard.  The Advisory Committee Notes could not be clearer on this point." (citing Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments)).  Because the timeliness requirement in Rule 12 did not change with the 2014 amendments to the rule, there was no need for this court in Lindsey or Reyes to address those amendments.  See 3 F.4th at 41; 24 F.4th at 16 n.8.  Accordingly, our holdings in those decisions bind our analysis here.

grounds. This argument misunderstands Rule 12's timeliness requirement. Under Rule 12(c)(3), review of an untimely 12(b)(3) motion is foreclosed absent good cause, regardless of whether the appellant intended to forgo an objection during trial.[4] See United States v. Galindo-Serrano, 925 F.3d 40, 47-49 (1st Cir. 2019) (holding that review of appellant's untimely suppression motion is precluded under Rule 12(c)(3) despite an absence of intentional waiver). This is made clear by the Rule 12 advisory committee notes, which state that

> [a]lthough the term waiver in the context of a criminal case ordinarily refers to the intentional relinquishment of a known right, [Rule 12] has never required any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion.

---

[4] Additional cases cited by Cardona Sr. do not refute this conclusion. Cardona Sr. first cites United States v. Soto, in which the government argued that the appellant's double jeopardy claim was waived under the pre-2014 version of Rule 12. 799 F.3d 68, 86 n.10 (1st Cir. 2015). We rejected the government's argument because "[t]he amended Rule 12 eliminated any reference to waiver." Id. We did not, however, issue a holding as to whether the present version of Rule 12 precluded review of the defendant's claim. See id. Cardona Sr. also cites United States v. Kuljko, but in that decision we avoided addressing whether "the appellant's challenge . . . was either waived or forfeited." 1 F.4th 87, 92 (1st Cir. 2021). Cardona Sr. additionally cites United States v. King, in which this court reviewed an unpreserved multiplicity claim for plain error. 554 F.3d 177, 180 (1st Cir. 2009). We did not address in that decision whether review was foreclosed by Rule 12. See id.

Fed. R. Crim. P. 12 advisory committee notes to 2014 amendments; see United States v. Fry, 792 F.3d 884, 888-89 (8th Cir. 2015) (declining to review multiplicity claim because appellant "has not shown 'good cause' for failing to raise a timely challenge to the multiplicity of the indictment"); United States v. Santiago-Ortiz, 797 Fed. App'x. 34, 38-39 (2d Cir. 2019) (unpublished) (holding that Rule 12(b)(3) multiplicity claim is not reviewable because appellant "fail[ed] to raise it before, during, or after trial in the district court"). In requiring a multiplicity claim to be made prior to trial, Rule 12's timeliness requirement prevents the "manifest[] unfair[ness]" that would result if the "defendant [could] sit silently by, take his chances with the jury, and then be allowed to ambush the prosecution through a post-trial attack." United States v. Walker, 665 F.3d 212, 228 (1st Cir. 2011). It also averts the "needless inefficiency in the trial process" that would obtain "if defendants [were] not required . . . to raise all of their grounds in pursuing a [pretrial motion]." United States v. Crooker, 688 F.3d 1, 10 (1st Cir. 2012). The "timely presentation of [defective indictment claims] to the district court allows full development of the factual record and permits

the government to appeal any adverse . . . decision prior to trial."[5]  Id.

## B.

Isaac Cardona argues for the first time on appeal that his money laundering conviction should be reversed because, in his view, the Money Laundering Control Act of 1986, 18 U.S.C. § 1956, violates the due process guarantee against vague criminal laws.

We must, here too, first determine whether this argument not made in the trial court or sought to be excused for good cause is reviewable.  The prosecution argues that this claim may not be reviewed on appeal under Fed. R. Crim. P. 12(b)(3) and (c)(3). Rule 12(b)(3) states that an argument that the indictment "fail[s] to state an offense" must be made before trial.  The prosecution argues that Cardona's claim that the Money Laundering Control Act is unconstitutional constitutes an objection that the indictment failed to state an offense, and so is covered by Rule 12(b)(3).[6] Cardona admits that his constitutional attack is a facial attack.

---

[5]     Isaac Cardona attempts in his reply brief to join Cardona Sr.'s multiplicity claim.  Because we hold that the claim is not reviewable, we do not address whether an appellant may adopt a co-appellant's argument for the first time in a reply brief. See United States v. De La Paz-Rentas, 613 F.3d 18, 29 (1st Cir. 2010).

[6]     To support this argument, the prosecution cites United States v. Seuss, in which this court held that an unconstitutional vagueness claim constitutes a "defense of failure of an indictment to charge an offense" under Rule 12.  474 F.2d 385, 387 n.2 (1st Cir. 1973).  At the time of the court's decision

- 14 -

Cardona does not dispute that Rule 12(b)(3) applies to his vagueness claim, and so we assume that his motion is covered by that provision.[7]  See Sabra v. Maricopa Cnty. Cmty. Coll. Dist.,

in Seuss, Federal Rule of Criminal Procedure 12(b)(2) stated that "[d]efenses and objections . . . that [the indictment or information] fails to show jurisdiction in the court or to charge an offense . . . shall be noticed by the court at any time during the pendency of the proceedings."  Fed. R. Crim. P. 12(b)(2) (1992).  In light of this language, we determined that the appellant's unpreserved vagueness claim was reviewable.  See Seuss, 474 F.2d at 387 n.2.  The 2014 amendments to Rule 12, however, "remove[d] language that allowed the court at any time while the case is pending to hear a claim that the 'indictment or information fails . . . to state an offense.'"  Fed. R. Crim. P. 12 advisory committee's note to 2014 amendments (alteration in original).  We do not address in this decision whether our holding in Seuss applies to the amended version of Rule 12.

We do note that two circuits have held that Rule 12(b)(3) covers constitutional attacks.  See United States v. Mullet, 822 F.3d 842, 847-48 (6th Cir. 2016) ("Because the defendants' argument [that the Hate Crimes Act is unconstitutional] does not go to the court's jurisdiction, they forfeited it by not raising it before trial [under] Fed. R. Crim. P. 12(b)(3)(B)." (emphasis in original)); United States v. Herrera, 51 F.4th 1226, 1282-85 (10th Cir. 2022) (holding that the defendant's unpreserved challenge to the constitutionality of the statute "both on its face and as applied" is waived under Rule 12(b)(3)(B)).

[7]     Cardona argues that unpreserved constitutional claims are reviewed de novo, but Cardona's argument does not address Rule 12, and with one exception, none of the cases cited in support of his argument address that rule.  The exception is United States v. DiSanto, in which this court stated that under Rule 12, "a claim that a statute is unconstitutional or that the court lacked jurisdiction may be raised for the first time on appeal."  86 F.3d 1238, 1244 (1st Cir. 1996).  DiSanto does not support Cardona's argument.  At the time of the court's decision in DiSanto, Rule 12(b)(2) expressly stated that an objection that the indictment fails to charge an offense could be raised "at any time during the pendency of the proceedings."  Fed. R. Crim. P. 12(b)(2) (1996).  The 2014 amendments to Rule 12 eliminated this language, rendering DiSanto's holding obsolete.  See Fed. R. Crim. P. 12 advisory committee notes to 2014 amendments ("[Rule 12] has

- 15 -

44 F.4th 867, 881 (9th Cir. 2022) (holding that appellant waives claim by failing to respond in reply brief to appellee's argument); Carlisle Ventures, Inc. v. Banco Español de Crédito, S.A., 176 F.3d 601, 609-10 (2d Cir. 1999) (declining to consider claim because appellant failed to respond in reply brief to appellee's argument that it was waived); Oken v. Corcoran, 220 F.3d 259, 273-74 (4th Cir. 2000) (Michael, J., concurring) (arguing that appellant abandoned rebuttal to appellee's waiver argument because he failed to raise it in his reply brief).

Cardona instead argues that Rule 12(c)(3)'s timeliness requirement for 12(b)(3) motions applies only to review by district courts, and so does not preclude appellate review of an unpreserved claim.[8]

We can easily dispose of this argument. This court has on multiple occasions concluded that Rule 12(c)(3) precludes

---

also been amended to remove language that allowed the court at any time while the case is pending to hear a claim that the 'indictment or information fails . . . to state an offense.'" (alteration in original)); see also United States v. Ríos-Rivera, 913 F.3d 38, 43 (1st Cir. 2019) (holding that DiSanto does not require the court to review unpreserved constitutional claims de novo, as its statement to that effect was mere dicta).

[8] Cardona did not expressly make this argument in his briefs. At oral argument, appellate counsel for Cardona clarified her argument that Rule 12(c)(3) does not constrain review by appellate courts. Appellate counsel during oral argument also opted not to argue that Cardona's vagueness claim is covered in the alternative by Fed. R. Crim. P. 12(b)(2), the rule that governs pretrial motions that may be made at any time.

- 16 -

appellate review of an untimely 12(b)(3) motion absent good cause. See Reyes, 24 F.4th at 16 n.8; Lindsey, 3 F.4th at 40-41. As we have explained, where a defendant does not "show 'good cause' for a failure to raise a Rule 12(b)(3) challenge prior to trial . . . . there is no unfairness in holding him to his waiver." Walker, 665 F.3d at 228. Cardona contends that, because his vagueness claim is one purely of law, there would be no prejudice to the government if we were to grant review. This ignores the judicial economy reasons for requiring a Rule 12(b)(3) motion to be heard prior to trial. See Crooker, 688 F.3d at 10. Cardona has put forth no argument as to why our previous rulings on Rule 12's timeliness requirement should not be followed. We cannot, then, review Cardona's vagueness claim.

## C.

Cardona next argues that insufficient evidence was presented at trial to support his money laundering conviction. The parties dispute the appropriate standard of review. We conclude that Cardona's claim fails under any standard, and so assume, in his favor, that the issue is preserved and apply de novo review. See United States v. Cadden, 965 F.3d 1, 10 (1st Cir. 2020) (observing that de novo review applies to preserved claim of insufficient evidence to support a conviction (citing United States v. Sebaggala, 256 F.3d 59, 63 (1st Cir. 2001))). We assess the evidence "'in the light most favorable to the

- 17 -

prosecution' and affirm so long as the 'body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt.'"  Id. (quoting United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999)).

> To commit promotional money laundering, one must,
>
> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity.

18 U.S.C. § 1956(a)(1).  Isaac argues that no evidence was shown at trial to support the charge that he had intended to promote the carrying on of heroin trafficking when he entered into the agreement to procure heroin in California to sell it in Massachusetts.

This argument misses the mark.  Cardona does not dispute that the evidence at trial established beyond a reasonable doubt that he had agreed to purchase heroin with an intent to resell it.[9]  Cardona's willingness to enter such an agreement, along with his specific intent to sell heroin, is sufficient for a rational trier of fact to find beyond a reasonable doubt that Cardona

---

[9]  Given that this aspect of the record is not in dispute, we do not inquire into the evidence establishing that Cardona conspired to purchase and resell heroin.

- 18 -

intended to promote the carrying on of heroin trafficking.  See
United States v. Santos, 553 U.S. 507, 518 (2008) ("Surely one
promotes 'the carrying on' of a gambling enterprise by merely
ensuring that it continues in business."); United States v. Trejo,
610 F.3d 308, 314 (5th Cir. 2010) (equating "intentional promotion"
with "the intent to further the progress" of the unlawful
activity); United States v. Warshak, 631 F.3d 266, 317 (6th Cir.
2010) ("The paradigmatic example of [promotional money laundering]
is a drug dealer using the proceeds of a drug transaction to
purchase additional drugs and consummate future sales." (citing
United States v. Torres, 53 F.3d 1129, 1137 n.6 (10th Cir. 1995)));
Torres, 53 F.3d at 1137 n.6 (finding testimony showed defendant
"would use the proceeds of the wire transfers to buy more
methamphetamine that would later be resold, thereby satisfying the
'promotion' element of § 1956(a)(1)(A)(i)").

Cardona maintains that his purpose in agreeing to sell
heroin was not to promote the carrying on of heroin trafficking,
but rather to pay back the debt he owed to Cruz.  This argument
confuses an intent to engage in unlawful activity with the
"ultimate objective" of said activity.  United States v. Cortés-
Cabán, 691 F.3d 1, 19 (1st Cir. 2012); see also United States v.
Santistevan, 39 F.3d 250, 255 n.7 (10th Cir. 1994) ("Motive, unlike
mens rea, is not an essential element of a criminal offense.").
Where a defendant's conduct satisfies the intent element of a

criminal offense, the defendant's ultimate objective, or motive, does not supplant that intent. See United States v. Hughes, 211 F.3d 676, 683 n.4 (1st Cir. 2000) ("Even if . . . [defendant's] primary motive was to cover up the murder, he nevertheless intended to carry out the cover up scheme by issuing an extortionate demand . . . .").

Cardona also argues that, if the promotion element of his money laundering conviction involved no more than a mere intent to sell heroin, then his money laundering conspiracy and heroin conspiracy convictions punished him twice for the same conduct and thereby present a "merger problem." Santos, 553 U.S. at 515-16. The Supreme Court has held that a money laundering conviction may present a merger problem where "nearly every violation of [the predicate crime with which the defendant is charged] would also be a violation of the money-laundering statute." Id. at 515.

No such merger problem is present here. One may conspire to distribute and possess with intent to distribute heroin without engaging in a financial transaction. 21 U.S.C. §§ 841(a)(1), 846; see Cortés-Cabán, 691 F.3d at 19 ("[I]t is well accepted that drugs may be distributed [under 21 U.S.C. § 841(a)(1)] by giving them away for free . . . ." (quoting United States v. Cormier, 468 F.3d 63, 70 n.3 (1st Cir. 2006))). Cardona therefore was not doubly punished for the financial transaction covered by his money laundering conviction. See United States v. Adorno-Molina, 774

F.3d 116, 123-24 (1st Cir. 2014) (holding that there is no merger problem for a money laundering conviction where the predicate crime is drug trafficking); United States v. Pratt, 533 F.3d 34, 38 (1st Cir. 2008) ("[T]he money laundering charge requires proof of a financial transaction, . . . which is [not] required to prove the drug conspiracy charge."); see also United States v. Webster, 623 F.3d 901, 906 (9th Cir. 2010) ("[C]onspiracy to possess with intent to distribute . . . and possession with intent to distribute . . . . do not merge with the money laundering crimes, because the drug crimes need not involve the exchange of money." (citing United States v. Ramirez, 608 F.2d 1261, 1264 (9th Cir. 1979))).

**D.**

Cardona additionally argues that we should vacate his money laundering conspiracy conviction on the basis of erroneous jury instructions. As the prosecution appropriately concedes, the trial court erroneously informed the jurors that to convict Cardona of conspiring to commit money laundering, they would need to find beyond a reasonable doubt "that the defendant knew the [financial] transaction to be either designed in whole or in part to promote the carrying on of a conspiracy to distribute and possess with intent to distribute a controlled substance."[10]  (Emphasis added). The statute, in contrast, requires the defendant to have

_____

[10]    The prosecution also admits that its proposed instructions to the court likely led to the error.

- 21 -

"inten[ded] to promote the carrying on of . . . unlawful activity." 18 U.S.C. § 1956(a)(1)(A)(i) (emphasis added); see United States v. Cedeño-Pérez, 579 F.3d 54, 57 (1st Cir. 2009).

Cardona did not object to the jury instruction at trial, so we review for plain error. United States v. Rivera-Ruperto, 852 F.3d 1, 10 (1st Cir. 2017). "Reversal under the plain error standard requires: (1) that an error occurred; (2) that the error was obvious; (3) that it affected the defendant's substantial rights; and (4) that it threatens the fairness, integrity or public reputation of the proceedings." Id. (citing United States v. Delgado-Marrero, 744 F.3d 167, 184 (1st Cir. 2014)). "[T]he road to success under the plain error standard [is] rather steep; hence, reversal constitutes a remedy that is granted sparingly." United States v. Latorre-Cacho, 874 F.3d 299, 303 (1st Cir. 2017) (quoting Delgado-Marrero, 744 F.3d at 184). Accordingly, "even when a district court makes a clear or obvious error in instructing the jury, the third prong of the plain error standard still requires the defendant to show that the 'outcome of the case would likely have changed' had the erroneous instruction not been given." Id. (quoting United States v. Colon, 744 F.3d 752, 758 (1st Cir. 2014)).

Cardona has not demonstrated a "reasonable probability" that the erroneous jury instructions affected the outcome of the case. Id. at 304. Although the court misinformed the jury as to

the mens rea element of money laundering, the court properly instructed the jury on the elements of conspiracy to possess with intent to distribute heroin. This included that, to convict the appellants of such a conspiracy, the jury would have to find that the appellants had "willfully joined" in "the agreement specified in the indictment," and that the appellants had done so with "a specific intent to distribute the heroin." See United States v. Pennue, 770 F.3d 985, 990 (1st Cir. 2014) (holding that, in determining whether the court's instructions were reasonably likely to have misled the jury, "we do not assess the problematic instruction in isolation, but, rather, inspect the jury charge as a whole" (first citing United States v. Van Anh, 523 F.3d 43, 58 (1st Cir. 2008); and then citing United States v. Cintolo, 818 F.2d 980, 1003 (1st Cir. 1987))). The jury convicted Cardona of conspiracy to possess with intent to distribute heroin, and so must have found that he had entered into the agreement with Cruz with a specific intent to distribute heroin. See United States v. Munyenyezi, 781 F.3d 532, 542 (1st Cir. 2015) ("We normally assume that juries follow instructions." (citing United States v. Acosta-Colón, 741 F.3d 179, 202 n.13 (1st Cir. 2013))). It is implausible that the jury could have found that Cardona had intended to distribute heroin, but not that he had intended to promote the carrying on of heroin distribution. See United States v. Doherty, 867 F.2d 47, 58 (1st Cir. 1989) ("We find the [erroneous jury

instructions] harmless . . . because we believe it virtually inconceivable that the jury could have found these appellants guilty of conspiracy to commit mail fraud without believing that they were conspiring to deprive the Commonwealth of money . . . ."). It is not likely that the jury, had it been properly instructed on the money laundering count, would have found that Cardona had not entered into a promotional money laundering conspiracy.[11]

**IV.**

We affirm the convictions.

---

[11] Cardona contends that the court's error was compounded by the prosecution's suggestion in opening and closing arguments that he had committed money laundering merely by driving cash in a concealed compartment to California. There is no indication of this in our reading of the record. Although the prosecution stated that Cardona had entered into a money laundering conspiracy when he agreed to transport cash to California, the prosecution did not make any statements implying that the offense did not involve an additional element of intent.