**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel CASAMAYOR, Defendant–**
**Appellant.**

**No. 14–15365**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 2016.

---

Sally M. Richardson, Miami, FL, Wifredo A. Ferrer, Laura Thomas Rivero, Kathleen Mary Salyer, Emily M. Smachetti, Ignacio Jesus Vazquez, Jr., Arimentha R. Walkins, U.S. Attorney's Office, Miami, FL, for Plaintiff–Appellee.

Joaquin Perez, Law Office of Joaquin Perez, Miami, FL, for Defendant–Appellant.

Before HULL, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM.

After pleading guilty, Daniel Casamayor Rojas ("Casamayor") appeals his total 262–month sentence on five offenses involving a conspiracy to rob a marijuana "grow house," to distribute marijuana, and to use firearms during the robbery and the drug trafficking. This is Casamayor's direct appeal raising multiple sentencing issues.

## I.  FACTUAL BACKGROUND

### A.  Offense Conduct

In September 2013, as part of an undercover sting operation, federal law enforcement officers approached Anthony Cremades about an opportunity to rob several "growhouses" operated by a (fictitious) narcotics organization. Cremades is Defendant Casamayor's cousin and co-defendant. Defendant Casamayor and Cremades expressed interest and, during several meetings with the undercover officers, indicated that they would need firearms and additional associates to accomplish the armed robbery. Cremades was unwilling to be physically present during the robbery.

Defendant Casamayor thus recruited co-defendant Maria Perez to assist in the robbery. Defendant Casamayor asked Perez to find a third gunman. Perez subsequently recruited co-defendant Guillermo Ferro.

On November 8, 2013, Defendant Casamayor met Perez and Ferro at a gas station, where they discussed their roles in, and strategy for, the armed robbery. The conspirators then drove to meet another individual and to get directions to the robbery target. Defendant Casamayor, who is a convicted felon, drove in a car that contained a loaded shotgun, a bulletproof vest, gloves, a baseball bat, a black shirt with a security logo, and a security officer's badge. Perez and Ferro drove in a separate car that contained a loaded pistol, gloves, and two black hats.

Law enforcement arrested the conspirators while they were in route to the meeting. In post-arrest statements, the conspirators admitted their involvement in the armed robbery scheme. Defendant Casamayor admitted helping to coordinate the conspiracy, including recruiting Perez to participate in the robbery and to find another gunman.

**B. Guilty Plea**

Defendant Casamayor pled guilty to five offenses: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); (2) conspiracy to possess with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count 2); (3) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(3) (Count 3); (4) conspiracy to use and carry a firearm during and in relation to the above crime of violence and drug trafficking crime and to possess a firearm in furtherance of these crimes, in violation of 18 U.S.C. § 924(o) (Count 5); and (5) using and carrying a firearm during and in relation to the above crime of violence and drug trafficking crime and possessing a firearm in further of these crimes, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count 6).[1]

**C. Presentence Investigation Report**

The Presentence Investigation Report ("PSI") grouped Counts 1, 2, 3 and 5 together and initially calculated a base offense level using U.S.S.G. § 2K2.1, the guideline applicable to unlawful possession of firearms and prohibited transactions involving firearms. The PSI assigned a base offense level of 24, under that guideline because Casamayor had at least two prior felony convictions for "a crime of violence or a controlled substance offense." *See* U.S.S.G. § 2K2.1(a)(2). Those convictions were: (1) a 2008 Florida conviction for fleeing/attempting to elude a police officer or marked car at high speed; and (2) 2012 Florida convictions for strong-arm robbery and aggravated battery with great bodily harm.

The PSI recommended a two-level increase, pursuant to U.S.S.G. § 2K2.1(b)(4)(A), because the pistol found in Perez's car was stolen. In the "Role Assessment" section, the PSI recommended a two-level managerial role increase because Casamayor took over the planning of the robbery from Cremades and provided the details to Perez and Ferro In calculating the adjusted offense level, however, the PSI omitted this recommended two-level increase and calculated an adjusted offense level of 26 under U.S.S.G. § 2K2.1. The PSI also recommended a three-level reduction for acceptance of responsibility pursuant to § 3E1.1(a) and (b), which resulted in a total offense level of 23.

Ultimately, the PSI did not use this total offense level of 23 because Casamayor was a career offender, pursuant to U.S.S.G. § 4B1.1(a). Casamayor's career offender

---

1. Count 4 was against only a co-defendant.

status was based on his two prior Florida convictions, referenced above, which were deemed crimes of violence under U.S.S.G. § 4B1.2(a).

The career offender table in U.S.S.G. § 4B1.3(c)(3) preset Casamayor's guidelines range because he was convicted of violating 18 U.S.C. § 924(c) in Count 6. The career offender table has three preset ranges depending on whether a defendant is eligible for an acceptance-of-responsibility reduction. Casamayor had a three-level reduction for acceptance of responsibility, and therefore the career offender table set Casamayor's advisory guidelines range as 262 to 327 months' imprisonment. *See* U.S.S.G. § 4B1.1(c)(3). The PSI explained that this preset range of 262 to 327 months is "inclusive of the 60 month consecutive term required Count 6," (the § 924(c) firearm offense).[2]

The PSI also concluded that Casamayor was an armed career criminal under U.S.S.G. § 4B1.4(a) and the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1)(B). Because the career offender provision produced the greatest guidelines range, the PSI used U.S.S.G. § 4B1.1(c)(3) to determine the advisory guidelines range.

The PSI assigned Casamayor 14 criminal history points and a criminal history category of VI. Casamayor's prior Florida convictions included, *inter alia:* (1) numerous convictions for possession of a controlled substance and driving with a suspended license; (2) three battery convictions; (3) a 1999 conviction for possession of cannabis with intent to sell or deliver; (4) a 2001 conviction for aggravated assault with a deadly weapon; (5) a 2004 conviction for robbery by snatching;

(6) a 2008 conviction for fleeing/attempting to elude a police officer or marked car at high speed; (7) a 2012 conviction for strong-arm robbery; (8) 2012 convictions for armed robbery with a firearm or deadly weapon and aggravated battery with a deadly weapon; and (9) 2012 convictions for strong-arm robbery and aggravated battery with great bodily harm. Casamayor did not object to the PSI's descriptions of any of his prior convictions.

The PSI also determined the statutory maximum penalties for Casamayor's five crimes. As to the § 922(g) firearm offense in Count 3, Casamayor was subject to a statutory maximum sentence of life, pursuant to the ACCA, 18 U.S.C. § 924(e). The PSI did not identify which three of Casamayor's many felony convictions supported this ACCA enhancement.

As to the armed robbery conspiracy in Count 1 and the conspiracy to use and carry firearms in Count 5, Casamayor was subject to a statutory maximum sentence of 20 years. *See* 18 U.S.C. §§ 924(*o*), 1951(a). As to the marijuana distribution conspiracy in Count 2, Casamayor was subject to a statutory maximum sentence of 5 years. *See* 21 U.S.C. § 841(b)(1)(D). The firearm offense in Count 6 carried a mandatory 5–year consecutive sentence. *See* 18 U.S.C. § 924(c)(1)(A).

Casamayor objected to the following guidelines calculations in the PSI: (1) a two-level role increase; (2) a two-level increase for the stolen firearm; and (3) the use of his 2008 fleeing-at-high-speed conviction as a crime of violence to determine his base offense level under U.S.S.G. § 2K2.1(a)(2) and his status as a career offender under § 4B1.1(a).

---

**2.** The career offender table in § 4B1.1(c)(3) is designed to provide "a sentence at or near the statutory maximum" for § 924(c) offenders "by using guideline ranges that correspond to a criminal history category VI and ... offense level 34 (assuming a 3–level reduction under § 3E1.1 applies)." U.S.S.G. § 4B1.1, cmt. background.

In a footnote in a sentencing memorandum, Casamayor acknowledged then-binding precedent indicating that vehicular flight convictions were violent felonies under the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii). *See Sykes v. United States,* 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011); *United States v. Petite,* 703 F.3d 1290 (11th Cir.2013).

### D. Sentencing

At sentencing, the district court first addressed Casamayor's objection to his career offender status under the Guidelines, explaining that the resolution of that issue, and whether he was also an armed career criminal under the ACCA, might make it unnecessary to reach Casamayor's other guidelines objections. The district court stated that it had spent time examining whether Casamayor "qualified as a career offender or as an armed career offender." The district court was "satisfied that the probation officer got this right, particularly based on the cases that appear in the footnote of [Casamayor's] sentencing memorandum."

Casamayor acknowledged that current precedent did not support his objection. Wanting to preserve the issue, Casamayor argued that his 2008 Florida fleeing-at-high-speed conviction was not "a violent crime [that] meets the intent of the career offender or violent career offender statute." The district court noted that Casamayor's conviction was not for simple fleeing, but for "an aggravated version" that involved "driving at a high speed."

The district court overruled Casamayor's objection, finding that Casamayor did qualify as a career offender and as an armed career criminal. The district court said, "[Y]ou go with whichever produces the higher sentence, which in this case would be the career offender sentence which is how we end up at 262 to 327

months." In light of this finding, the district court concluded that there was "no need to deal with the organizer/leader or the stolen gun issue[s]."

Casamayor requested a downward variance to no more than 240 months, which represented the mandatory minimum sentences of 15 years (180 months) on the § 922(g) felon in possession of a firearm offense in Count 3 and 5 consecutive years (60 months) on the § 924(c) using and carrying a firearm offense in Count 6.

After listening to the parties' arguments, the district court denied Casamayor's request for a downward variance and determined that a sentence at the low end of the advisory guidelines range was appropriate. The district court imposed a sentence of (1) 202 months on Counts 1, 3 and 5, to run concurrently; (2) 60 months on Count 2 to run concurrently with Counts 1, 3 and 5; and (3) 60 months on Count 6 to run consecutively to all the other counts. This yielded a total sentence of 262 months (202 months plus the consecutive 60 months).

## II. DISCUSSION

### A. Offense Level Adjustments

■ On appeal, Casamayor argues that the district court erred when it failed to consider and sustain his objections to the offense-level increases for possessing a stolen weapon, under U.S.S.G. § 2K2.1(b)(4)(A), and for having a managerial role, under U.S.S.G. § 3B1.1(c). At sentencing, the district court should rule on the disputed matters unless it determines "that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed.R.Crim.P. 32(i)(3)(B).

Here, in compliance with Rule 32(i)(3)(B), the district court determined

that a ruling on these two offense-level increases was unnecessary because they would not affect Casamayor's sentence. As the district court explained, Casamayor's advisory guidelines range was not driven by the adjusted offense level calculated pursuant to Chapters 2 and 3 of the Sentencing Guidelines, but by the preset guidelines range set out in § 4B1.1(c)'s career offender table. Accordingly, we conclude that the district court, at the time, did not err in not ruling on the two offense-level objections regarding the stolen firearm or his role in the offense.

## B. Fifth and Sixth Amendment Sentencing Claim

For the first time on appeal, Casamayor contends that the district court violated his Fifth and Sixth Amendment rights by imposing a sentence on the § 922(g) felon in possession of a firearm offense in Count 3 that was above the ten-year maximum authorized by 18 U.S.C. § 924(a)(2).[3] Casamayor argues that he is not subject to the ACCA's enhanced penalties in § 924(e) because the government did not charge three qualifying violent felonies or serious drug offenses in his indictment or prove them to a jury beyond a reasonable doubt.

Casamayor's argument is foreclosed by binding precedent. The Supreme Court has long held that a prior conviction may be used to enhance a defendant's sentence even though it is not charged in the indictment or proven beyond a reasonable doubt. *See Almendarez–Torres v. United States*, 523 U.S. 224, 239–47, 118 S.Ct. 1219, 1228–33, 140 L.Ed.2d 350 (1998); *see also Apprendi v. New Jersey*, 530 U.S. 466, 489–90, 120 S.Ct. 2348, 2362, 147 L.Ed.2d 435 (2000) (expressly declining to overrule *Almendarez–Torres*).

Casamayor contends that *Almendarez–Torres* has been abrogated by *Alleyne v. United States*, 570 U.S. ——, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), but this Court has already rejected that argument. *See United States v. Harris*, 741 F.3d 1245, 1249–50 (11th Cir.2014) (explaining that the *Alleyne* Court declined to revisit *Almendarez–Torres* and that "we are not free to do what the Supreme Court declined to do in *Alleyne*"). Accordingly, Casamayor has not shown error, much less plain error.

## C. ACCA Enhancement on Count 3

■ The ACCA enhancement in § 924(e) was applied to only Count 3, Casamayor's § 922(g) offense for being a felon in possession of a firearm. Under the ACCA, a person convicted of being a felon in possession of a firearm under § 922(g) who has three prior convictions for a "violent felony" or a "serious drug offense" is subject to a 15–year mandatory minimum sentence and a maximum life sentence. *See* 18 U.S.C. § 924(e)(1).[4] Casamayor argues that his Florida fleeing-at-high-speed conviction is no longer a qualifying predicate offense under the ACCA's residual clause, 18 U.S.C. § 924(e)(1)(B)(ii).

---

**3.** While this Court ordinarily reviews constitutional sentencing issues *de novo*, where the defendant fails to raise the constitutional objection at sentencing, our review is for plain error. *United States v. Harris*, 741 F.3d 1245, 1248 (11th Cir.2014).

**4.** The ACCA defines a "violent felony" as any crime punishable by imprisonment for more than one year that:

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "elements clause"]; or
(ii) is burglary, arson, or extortion, involves use of explosives [the "enumerated crimes clause"], or otherwise involves conduct that presents a serious potential risk of physical injury to another [the "residual clause"].
18 U.S.C. § 924(e)(2)(B).

While Casamayor's appeal was pending, the Supreme Court decided *Johnson v. United States,* 576 U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), which held that the residual clause in the ACCA was unconstitutionally vague. 135 S.Ct. at 2563. Thus, Casamayor's fleeing-at-high-speed conviction would not qualify as a predicate offense under the ACCA's residual clause.[5]

Nonetheless, the government contends that Casamayor has at least three other prior convictions that qualify under the ACCA's elements clause, such as his Florida convictions for strong-arm robbery and armed robbery with a firearm or deadly weapon in 2012, and for aggravated assault with a deadly weapon in 2001. The Supreme Court in *Johnson* did not call into question the remainder of the ACCA's definition of a "violent felony," namely the elements clause and the enumerated crimes clause. *See Johnson,* 576 U.S. at ——, 135 S.Ct. at 2563.

The problem in this case, however, is that the district court at sentencing did not identify which of Casamayor's prior felony convictions it relied upon to support the ACCA enhancement. Accordingly, we remand for the district court to determine in the first instance whether the ACCA-enhanced sentence of 202 months on Count 3 may be supported by any of Casamayor's other prior felony convictions and if so under what clause.[6] Without the ACCA enhancement raising the statutory maximum to life, Casamayor's punishment on Count 3 cannot exceed the ten-year statu-

tory maximum under 18 U.S.C. § 924(a)(2).

**D. Career Offender Guideline**

Casamayor also argues that, after *Johnson,* his fleeing-at-high-speed conviction no longer qualifies as a "crime of violence" for purposes of the career offender provision in U.S.S.G. § 4B1.2(a)(2). The Supreme Court in *Johnson* did not address the career offender provisions of the Sentencing Guidelines. This Court held in *United States v. Matchett,* 802 F.3d 1185 (11th Cir.2015), that the residual clause in § 4B1.2(a)(2)'s definition of "crime of violence" is not unconstitutionally vague in light of *Johnson* because the vagueness doctrine is inapplicable to the advisory Sentencing Guidelines. *Matchett,* 802 F.3d at 1189, 1193–96.

Thus, to the extent Casamayor contends the district court erred in classifying him as a "career offender" because § 4B1.2(a)(2)'s residual clause is unconstitutionally vague, his argument is foreclosed by *Matchett.* Furthermore, this Court has concluded that the particular aggravated fleeing offense of which Casamayor was convicted—fleeing and eluding a police officer by driving at high speed, in violation of Florida Statutes § 316.1935(3)—constitutes a "crime of violence" under § 4B1.2(a)(2)'s residual clause. *See United States v. Harris,* 586 F.3d 1283, 1287–89 (11th Cir.2009). Because Casamayor's Florida aggravated fleeing conviction is a qualifying offense under § 4B1.2(a)(2), the district court did not err in determining that Casamayor was a career offender un-

---

5. We review *de novo* whether Casamayor's Florida fleeing-at-high-speed conviction is a violent felony under the ACCA and a crime of violence under the career offender provisions of the Sentencing Guidelines. *United States v. Wilkerson,* 286 F.3d 1324, 1325 (11th Cir. 2002); *See United States v. Gibson,* 434 F.3d 1234, 1243 (11th Cir.2006).

6. The government contends Casamayor's fleeing-at-high-speed conviction may still qualify under the elements clause. We do not reach that issue because the district court relied on the residual clause as to this conviction. The other clause issues should be decided by the district court in the first instance.

der § 4B1.1(a) and assigning him the preset advisory guidelines range of 262 to 327 months under the career offender table in § 4B1.1(c).[7] Thus, Casamayor has not shown a reversible error in the district court's sentencing him as follows on these counts: 202–month sentences on Counts 1 and 5 to run concurrently, a 60–month sentence on Count 2 to run concurrently with Counts 1 and 5, and a 60–month sentence on Count 6 to run consecutively to Counts 1, 2 and 5.

### III.  CONCLUSION

Accordingly, we vacate Casamayor's sentence on Count 3 and remand for resentencing on that count.  Nothing herein should be read as expressing any opinion as to the appropriate final sentence.

**AFFIRMED IN PART, VACATED AND REMANDED.**

---

7. Although we do not require it, on remand the district court also may want to determine whether any of Casamayor's other prior convictions also support his career offender status under § 4B1.2 and, if so, under which subsections.