# United States Court of Appeals
## For the First Circuit

---

Nos. 23-1848
     23-1849

UNITED STATES OF AMERICA,

Appellee,

v.

DONALD TURNER,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Lance E. Walker, U.S. District Judge]

---

Before

Rikelman, Lynch, and Aframe,
Circuit Judges.

---

Vivian Shevitz for appellant.

Lindsay B. Feinberg, Assistant United States Attorney, with whom Darcie N. McElwee, United States Attorney, and Benjamin M. Block, Assistant United States Attorney, were on brief, for appellee.

---

December 27, 2024

---

**AFRAME, Circuit Judge**.  Defendant-appellant Donald Turner pleaded guilty to bank robbery, 18 U.S.C. § 2113(a), and unlawful possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1).  Turner, who was on supervised release when he committed those crimes, also admitted to related supervised-release violations.

Turner previously had been convicted of numerous violent felonies and was consequently designated an armed career criminal. See 18 U.S.C. § 924(e).  That designation resulted in an advisory sentencing guideline range of 180 to 210 months of imprisonment. In a combined sentencing and revocation hearing, the district court imposed 210-month concurrent sentences on the counts of conviction, revoked Turner's supervised release, and imposed a 24-month consecutive sentence for the supervised-release violations.

On appeal, Turner argues that his felon-in-possession conviction should be reversed because prosecuting him on this count violated his Second Amendment right "to keep and bear Arms." U.S. Const. amend. II.  He also contends that the district court committed procedural and substantive errors in imposing his sentence.  Finally, Turner claims that the court imposed a consecutive supervised-release sentence based on its misapprehension that a policy statement to the sentencing guidelines required a consecutive sentence.

We reject these arguments. Turner waived his as-applied Second Amendment claim by failing to move timely for dismissal of the felon-in-possession count as required by Federal Rule of Criminal Procedure 12. The district court imposed a procedurally sound sentence, which was substantively reasonable. And, finally, the record does not support Turner's claim that the district court believed it was required to impose a consecutive revocation sentence.

## I.   BACKGROUND

We draw the facts underlying Turner's convictions from the government's recitation of the offense conduct filed in connection with the change-of-plea hearing and the undisputed portions of the presentence investigative report. See United States v. Kitts, 27 F.4th 777, 781 (1st Cir. 2022). We recite them in brief here, providing further elaboration as necessary for our discussion of Turner's claims.

Turner is a serial bank robber. On March 18, 2006, Turner entered a Gorham Savings Bank in Portland, Maine, and showed the teller a note stating that he was armed and demanding $8,000 in cash. The teller gave Turner approximately $1,800, and he left without being apprehended. Two days later, Turner entered a TD Bank North in South Portland, Maine. He handed the teller a note stating that he had a bomb and told her to give him money. The teller gave Turner $4,000. Turner was later arrested and convicted

- 3 -

of two counts of bank robbery, 18 U.S.C. § 2113(a), for which he was sentenced to sixty months' imprisonment.

On June 24, 2011, while on supervised release for his 2006 bank robbery convictions, Turner entered a Bangor Savings Bank in Bangor, Maine.  He handed the teller a note claiming that he had a bomb and demanding money.  Turner was arrested and again convicted of bank robbery.  This time, he was sentenced to seventy-two months' imprisonment for the robbery, followed by twenty-four months' imprisonment for violating the terms of his supervised release.

During the afternoon of September 10, 2020, while on supervised release for his 2011 robbery conviction, Turner entered a Bangor Savings Bank in Bangor, Maine.  Turner approached the teller and showed her a note that was not recovered but which essentially stated that he was conducting a robbery and possessed a gun.  Turner did not display a firearm.  The teller initially provided Turner with money from her cash drawer, much of it in one-dollar denominations.  After Turner demanded larger denominations, the teller provided him with just over $1,300 in cash.  Turner then placed the robbery note and money in his backpack and left though the bank's back door.

After publishing bank video surveillance footage, the police received several reports identifying Turner as the robber. The police eventually found Turner at an apartment in Bangor and

- 4 -

arrested him.  When the police arrested Turner, they found, among other items, $200 in United States currency and, in his waistband, a .25-caliber Titan-brand firearm.

Following Turner's arrest, he made a statement to the police.  He said that he had robbed the bank to obtain money so that he could leave Maine before the United States Marshals arrested him for supervised-release violations.  He also admitted to possessing the seized firearm on the day of the robbery but denied bringing it into the bank, stating that it was missing a firing pin (a fact later confirmed through forensic examination).

On March 10, 2021, a grand jury indicted Turner for bank robbery and possessing a firearm as a convicted felon.  On November 2, 2022, Turner pleaded guilty to both counts.  Following his guilty plea, the probation office brought an additional supervised release violation for committing criminal offenses while on release.  On October 6, 2023, the district court held a hearing at which it sentenced Turner to 210-month concurrent sentences on the counts of conviction, revoked his supervised release, and imposed a 24-month consecutive sentence for the supervised release violations.  Turner timely appealed from the judgments entered in the criminal case and the revocation proceeding.

## II. DISCUSSION

### A.  Second Amendment Claim

We begin with Turner's as-applied Second Amendment claim.  Although the argument on appeal is terse, Turner appears to contend that the district court should have dismissed the felon-in-possession count because § 922(g)(1), as applied to him, violates his rights under the Second Amendment.  He asserts that he "never used the weapon" during the robbery; "[i]t is not clear that he owned [the firearm]"; and "the weapon found when he was arrested lacked a firing pin and was inoperable."  In support of his argument, Turner cites a single out-of-circuit district court decision that he "adopts . . . by reference" without elaboration.[1]

We conclude that Turner waived his Second Amendment argument because he did not timely move to dismiss the felon-in-possession count as required by Federal Rule of Criminal Procedure Rule 12 and has not demonstrated good cause for failing to do so.[2]  To place this conclusion in context, we first describe

---

[1]  The decision, United States v. Bullock, 679 F. Supp. 3d 501 (S.D. Miss. 2023), has since been reversed.  See United States v. Bullock, No. 23-60408, 2024 WL 4879467 (5th Cir. Nov. 25, 2024).

[2]  The government submits that we may find Turner's Second Amendment claim waived for other reasons, including the waiver of appellate rights in his plea agreement.  Because the district court did not specifically inquire about that waiver at Turner's change-of-plea hearing -- one of the considerations for determining whether such a waiver should be enforced, see United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008) (citing United

how Turner put his Second Amendment claim before the district court. We then explain why that presentation did not comply with Rule 12.

The district court established October 11, 2021, as the deadline for filing pretrial motions. Turner did not file any motions aside from a motion to suppress his post-arrest statements. In June 2022, the United States Supreme Court decided New York State Rifle & Pistol Ass'n v. Bruen, in which the Court explained that, to overcome a properly preserved Second Amendment challenge to a restriction on firearm possession, the government bears the burden of demonstrating that the restriction at issue is "consistent with the Nation's historical tradition of firearm regulation." 597 U.S. 1, 24 (2022).

Turner pleaded guilty on November 2, 2022. Turner did not mention the Second Amendment until May 19, 2023, when he filed his sentencing memorandum. In a section entitled, "The nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1): [Turner] did not possess a weapon inside the bank and the weapon he did possess was inoperable," Turner argued that his conduct was mitigated by the fact that he did not bring a gun into the bank; he then observed that "[t]he constitutionality of 18 U.S.C. § 922(g)(1) has come under increasing scrutiny after" Bruen. In a single sentence, he

_____

States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001)) -- we choose to resolve Turner's Second Amendment claim on Rule 12 grounds.

suggested that "th[e] Court may and should declare 18 U.S.C. § 922(g)(1) unconstitutional." Thereafter, he concluded by asserting that "[t]he salient point, and the one that matters for purposes of § 3553(a), is that although [Turner] did possess a weapon and weapons possession by a prohibited person is concerning, the gun that [Turner] had lacked a firing pin and was therefore incapable of firing a bullet." The government, which had already filed its sentencing memorandum, did not respond to Turner's memorandum.

At the sentencing hearing, the district court resolved Turner's sentencing objections. The final objection was Turner's Second Amendment claim as just described. The court noted that, although the objection was "not insubstantial," the parties "ha[d] not briefed" it. The court then invited the government to address the issue.

The government argued that Turner's previous violent felonies were sufficiently dangerous that he lawfully could be prohibited from possessing firearms. Turner responded that the government had not "carried [its] burden," citing an out-of-circuit district court decision. The government then added that it "could be wrong" but thought that Turner's Second Amendment claim "may be waived" because the time for filing motions under Rule 12 had passed "by quite a significant time." Turner did not claim to have filed a Rule 12 motion to dismiss the indictment but

responded that Class v. United States, 583 U.S. 174 (2018), permitted him to raise a Second Amendment claim at any time.

Having heard the parties' arguments, the district court stated that the objection did not "fail[] for being untimely." Rather, the court explained that, because of Turner's record of violent felonies, the case was not "anywhere near the . . . line" where sentencing him under § 922(g) might pose a "close call" or a constitutional concern. The court then overruled the objection.

Several pertinent facts are apparent. Turner never moved to dismiss the felon-in-possession count of the indictment. He raised the Second Amendment issue as part of an argument for sentencing leniency only after he had pleaded guilty to the felon-in-possession offense. The district court called the Second Amendment argument a sentencing "objection," a label consistent with Turner's first presentation of the issue in his sentencing memorandum and one to which Turner did not object. The court further recognized that Turner's argument was a sentencing objection when it declined to find the argument untimely. And, when it ultimately rejected Turner's argument, it did so by overruling his "objection."

Because Turner did not seek dismissal of the felon-in-possession count in the district court as required by Rule 12 and has not demonstrated good cause for failing to do so,

we do not consider his Second Amendment argument on the merits.[3]

Rule 12 serves an important purpose: it eliminates "needless inefficiency in the trial process" by requiring parties to timely raise certain defenses, objections, and requests that rest on a reasonably available basis and can be resolved without a trial on the merits. United States v. Crooker, 688 F.3d 1, 10 (1st Cir. 2012); see also Fed. R. Crim. P. 12(b)(3). As pertinent here, Rule 12(b)(3) requires that a party raise by pretrial motion "a defect in the indictment . . . including . . . [a] failure to state an offense." Fed. R. Crim. P. 12(b)(3).[4]

---

[3] On appeal, Turner does not assert his Second Amendment argument as part of a challenge to his sentence. Rather, Turner has turned that argument into an attack on his conviction: namely, that the district court should have dismissed the felon-in-possession count on Second Amendment grounds. Such sleight of hand does not avoid his Rule 12 problem.

[4] Although Rule 12(b)(3) does not cover motions asserting "that the court lacks jurisdiction," which "may be made at any time while the case is pending," Fed. R. Crim. P. 12(b)(2), that is of no help to Turner because a challenge to a statute of conviction on constitutional grounds is not jurisdictional, see United States v. Carrasquillo-Peñaloza, 826 F.3d 590, 592–93 (1st Cir. 2016); United States v. Nueci-Peña, 711 F.3d 191, 196–97 (1st Cir. 2013); United States v. Cardales-Luna, 632 F.3d 731, 737-38 (1st Cir. 2011); see also United States v. Curry, No. 23-1047, 2024 WL 3219693, at *4 n.6 (10th Cir. June 28, 2024) (observing that facial challenges to a statute's constitutionality constitute defective-indictment claims that defendants generally must raise "before trial or show good cause for their failure" to do so); United States v. Herrera, 51 F.4th 1226, 1282-85 (10th Cir. 2022) (applying Rule 12(b)(3) to facial and as-applied challenges alleging that 18 U.S.C. § 1959's "position clause" exceeded Congress's lawmaking authority under the Commerce Clause).

The start of trial is the default deadline for filing Rule 12(b)(3) motions, but the district court may set an earlier deadline or reset an existing deadline.  See Fed. R. Crim. P. 12(c)(1)-(2).  Here, the court, after several resets, established October 11, 2021, as the deadline for filing pretrial motions.  That deadline was over a year and a half before Turner first mentioned the Second Amendment in his sentencing memorandum.

A late-filed Rule 12(b)(3) motion may not be considered unless "the party shows good cause" for the belated filing.  Fed. R. Crim. P. 12(c)(3).  When a party misses a Rule 12 deadline and does not demonstrate good cause for doing so, the consequence is that the matter is waived on appeal.  See United States v. Reyes, 24 F.4th 1, 16 n.8 (1st Cir. 2022) (explaining that unpreserved Rule 12(b)(3) and (c)(3) arguments are not subject to review on appeal, even for plain error, absent good cause); United States v. Lindsey, 3 F.4th 32, 40-42, 41 n.6 (1st Cir. 2021) (declining to apply plain error review and finding waived a claim covered by Rule 12 that was not raised below, and as to which good cause did not exist to excuse the failure).  Turner does not attempt to demonstrate good cause for having failed to file a Rule 12 motion

to dismiss the indictment.[5]  See United States v. Bailey, 121 F.4th 954, 959-60 (1st Cir. 2024)

Turner also does not claim that an as-applied Second Amendment argument for dismissal of a count of an indictment falls outside of Rule 12(b)(3)'s scope.  See United States v. Cardona, 88 F.4th 69, 77-78 (1st Cir. 2023) (assuming that constitutional vagueness challenge to an indictment fell within the scope of Rule 12 where the defendant did not dispute Rule 12(b)(3)'s application).  Nor does he argue that his Second Amendment claim required "a trial on the merits" to resolve.  See Bailey, 121 F.4th at 959 (quoting Fed. R. Crim. P. 12(b)(3)).

Rather, Turner's only response is that the district court must have implicitly excused his noncompliance with Rule 12(b)(3) because it chose to address the Second Amendment claim on the merits during the sentencing hearing.  We disagree with Turner's characterization of the court's action.

The district court's statement that Turner's Second Amendment argument did not "fail[] for being untimely" does not mean that the court determined that Turner complied with Rule 12

---

[5]  That Bruen was decided after Turner was indicted does not establish good cause.  Turner pleaded guilty several months after Bruen, and our pre-Bruen caselaw did not foreclose as-applied Second Amendment challenges.  See United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011) (contemplating the possibility of a successful as-applied challenge to § 922(g)(1) in light of District of Columbia v. Heller, 554 U.S. 570 (2008) and McDonald v. City of Chicago, 561 U.S. 742 (2010)).

or demonstrated good cause for failing to do so. As explained already, the court did not rule that Turner could proceed with a belated motion covered by Rule 12(b)(3); rather, Turner raised the Second Amendment issue in a sentencing objection, and the court rejected the argument on those terms.

Turner's citation to Class, made at the sentencing hearing and again here, is also unavailing. Class holds that "a guilty plea by itself does not bar" a defendant from arguing on appeal that "the statute of conviction violates the Constitution." 583 U.S. at 176. Class does not, however, hold as a general matter that defendants are entitled to appellate review of constitutional claims, no matter their procedural missteps. See id.; cf. United States v. Ríos-Rivera, 913 F.3d 38, 41–43 (1st Cir. 2019) (holding that Class does not preclude application of plain-error review to forfeited constitutional claim). Nor does Class address Rule 12; indeed, post-Class, we found waiver under Rule 12(b)(3) where a defendant argued on appeal that the statute of conviction was unconstitutionally vague but had failed to move for dismissal of the indictment on that ground in the district court. See Cardona, 88 F.4th at 77–78. Turner's mention of Class does not afford him a free pass from Rule 12(b)(3)'s requirement.

In sum, because Turner did not move in the district court for dismissal of the felon-in-possession count and has not

- 13 -

demonstrated good cause for failing to do so, we do not consider the argument on appeal.  See Cardona, 88 F.4th at 77-78.

We add a concluding observation.  This case demonstrates the importance of compliance with Rule 12 to the orderly consideration of covered claims, including motions to dismiss based on the Second Amendment.  By raising a Second Amendment claim as part of a post-plea sentencing argument, Turner caused a situation in which the district court faced what it viewed as a "not insubstantial" question without briefing from the parties. Mandating compliance with Rule 12 spares district courts from having to resolve claims on inadequate records and argument caused by belated and haphazard party presentation.  See Cardona, 88 F.4th at 77 (observing that compliance with Rule 12 requires "timely presentation of . . . claims to the district court" to "allow[] full development of the factual record" (quoting Crooker, 688 F.3d at 10)).

### B.    Sentencing Claims

Following the district court's resolution of Turner's sentencing objections -- including an objection to the presentence report's application of a threat-of-death adjustment under U.S.S.G. § 2B1.3(b)(2)(f) that we discuss at greater length below -- the government argued for a 180-month sentence, the low end of the guideline range and the mandatory minimum sentence under 18 U.S.C. § 924(e).  The government emphasized Turner's pattern of

- 14 -

committing bank robberies and the fact that his actions "placed the tellers in fear for their lives." The government also recognized that Turner's criminal actions were influenced by "childhood trauma, mental health issues, and significant substance abuse struggles."

Turner joined the government's request for a 180-month sentence. Turner's counsel emphasized that, when Turner committed the bank robbery, he "was in the middle of a mental health crisis . . . was ostensibly homeless, and . . . was suicidal." Turner's counsel noted also that Turner had "asked for help from his probation officer, and, unfortunately, . . . didn't get it." Finally, Turner's counsel highlighted that Turner had demonstrated contrition to the district court by, among other actions, withdrawing his motion to suppress and pleading guilty.

Turner then provided a lengthy allocution. He stated that he was high on drugs when he robbed the bank and that his relapse was a response to stress from having to work during the COVID-19 pandemic in a job that exposed him to the virus. He further explained that, in his view, he unsuccessfully sought help from his probation officer in the period before the robbery. As he explained it, the probation officer "could have set [him] up so simply," by calling Turner's girlfriend and asking her to give Turner money that he "so desperate[ly]" needed, "yet [the officer] chose not to do it." In the same vein, Turner stated that he was

"dumbfounded[] that the people that were supposed to be advocating for [him] would allow [him] to hang" himself.

Turner acknowledged that he felt "terrible" for scaring the teller and that he "own[ed] what [he] did." He also stated that he needed drug and mental-health treatment but that the Bureau of Prisons offered inadequate treatment options. After describing himself as "not a violent person," "the hardest worker," and "the smartest guy nine times out of ten," Turner concluded by admitting that he had "done horrible things while on drugs," which he had to "live with . . . every day."

Following the argument, the district court determined, without objection, that Turner faced an advisory guideline range of 180 to 210 months. The court then explained its rationale for imposing a sentence at the top of that range. It noted the aggravated nature of the offense, stating that bank robbery was a serious "societal violation" that terrorizes the teller and instills fear in the community. It also observed that Turner was "a thrice-convicted bank robber [who had] threatened people with violence."

The district court then accounted for various mitigating factors, including that Turner had experienced trauma from a young age and suffered from mental-health issues and substance abuse disorder. The court did not, however, accept Turner's suggestion

that the alleged failings by the probation department "resulted in [him] committing another bank robbery."

Ultimately, the district court explained that:

> [T]he criteria [it] find[s] most important to account for is the seriousness of the offense, which can hardly be overstated, particularly in light of remarkably similar criminal history, to provide just punishment and to afford adequate deterrence. And . . . in this case, to protect the public from further crimes of the defendant.

Given these considerations, the court concluded that a 210-month sentence was "sufficient but not greater than necessary to correspond to the need for the sentence."

Here, Turner contests the district court's sentencing determination on procedural and substantive grounds. Procedurally, he contends that the court erred by (1) declining to rule on the applicability of the threat-of-death adjustment; (2) failing to consider certain mitigating factors; (3) not adequately explaining the chosen sentence; and (4) mistaking his statements about his probation officer's conduct as indicating a lack of remorse. Substantively, Turner contends that the court overvalued his criticisms of the probation officer and criminal justice system in determining the sentence.

### 1. Procedural Reasonableness

We begin with Turner's procedural claims. Ordinarily, we review such claims for abuse of discretion. See United States

v. Bruno-Campos, 978 F.3d 801, 805 (1st Cir. 2020). When, however, a defendant pursues on appeal a procedural claim that was not raised in the district court, we review for plain error. See id. That standard requires the defendant to show a clear or obvious error that affected his substantial rights and seriously impaired the fairness, integrity, or public reputation of the judicial process. See id. Here, Turner preserved only an argument about the threat-of-death adjustment. We therefore review that claim for abuse of discretion and the other claims for plain error.

### a.    Threat-of-Death Adjustment

Turner argues that, in determining the guideline offense level for his bank robbery conviction, the district court should have rejected the presentence report's application of the threat-of-death adjustment under § 2B1.3(b)(2)(F) of the sentencing guidelines. He contends that merely informing the teller he had a gun while committing the robbery does not qualify for the adjustment.

Turner pays little regard, however, to the district court's actual ruling: that it would bypass the threat-of-death issue because doing so would not affect the sentencing. Turner's only response is that the court had to resolve the point because a favorable ruling would have reduced his guideline offense level for the bank robbery count.

That argument fails. Federal Rule of Criminal Procedure Rule 32(i)(3)(B) provides that, at sentencing, a court must rule on "any disputed portion of the presentence report or other controverted matter" unless the court determines that a ruling is unnecessary "because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Here, the district court expressly concluded that it "was not going to rule on the [threat-of-death] objection[] as the matter will not affect sentencing."

The district court appropriately invoked Rule 32(i)(3)(B). Turner's sentencing guideline range was determined by his armed-career-criminal designation under chapter four of the guidelines. See U.S. Sent'g Guidelines Manual § 4B1.4(b)(3)(B) (U.S. Sent'g Comm'n 2021). Application of the threat-of-death adjustment, however, would have affected only the offense level for the robbery count under chapters two and three of the sentencing guidelines. See id. § 2B1.3(b)(2)(F). Thus, if the district court had rejected the threat-of-death adjustment -- the outcome Turner is seeking -- it would have made no difference in the applicable guideline range. See United States v. Meredith, 712 F. App'x 298, 299 (4th Cir. 2018) (explaining that district court properly declined to resolve a chapter three guideline issue where the sentencing range was established by the chapter four

career-offender guideline); United States v. Casamayor, 643 F. App'x 905, 909-10 (11th Cir. 2016) (similar).

### b.    Mitigating Factors

Turner argues next that the district court ignored certain mitigating factors in selecting the sentence. In particular, Turner alleges that the court overlooked his desire for drug treatment, his view that the Bureau of Prisons provides inadequate treatment opportunities, his "hard life," and the fact that his latest crimes were caused by COVID-related stress.

When imposing a sentence, a district court must consider all the relevant sentencing factors under 18 U.S.C. § 3553(a). United States v. MacVicar, 96 F.4th 51, 56 (1st Cir. 2024). It is not required, however, to "specifically rebut every argument that a defendant makes, so long as the record makes reasonably clear that the court considered the pertinent sentencing factors." United States v. Burgos-Balbuena, 113 F.4th 112, 121 (1st Cir. 2024). Here, the parties' presentations and the court's sentencing explanation make clear that the court did not ignore pertinent sentencing factors or fail to consider proposed mitigating considerations.

The district court imposed a sentence within the advisory guideline range after a lengthy hearing which focused primarily on Turner's view of the mitigating factors. Turner and his lawyer argued about Turner's desire for treatment, his

displeasure with criminal justice system (including the lack of treatment options at the Bureau of Prisons), and the challenges he faced during COVID-19. The presentence report also described Turner's upbringing and substance abuse disorder. The court stated that it had considered all this material. It expressly mentioned that Turner "struggled mightily" with a substance abuse disorder and mental health issues, factors that it considered to be mitigating. And it also stated that it understood the "vulnerability" Turner experienced because of his relapse during the COVID-19 pandemic, although this vulnerability did not, in the court's view, justify robbing a bank.

On this record, there is no basis for concluding that the district court overlooked Turner's presentation of mitigating facts, which it heard just before sentencing him. See Burgos-Balbuena, 113 F.4th at 121. It is apparent that the court considered Turner's substance abuse problems and the circumstances of his relapse; it simply did not assign those considerations the weight that Turner wanted. See United States v. Rodriguez-Monserrate, 22 F.4th 35, 41 (1st Cir. 2021). That does not constitute a procedural error.

### c. Explanation of Sentence

Turner next argues that the court did not provide a sufficient explanation for choosing a sentence above the bottom of the advisory guideline range. We disagree.

We have described the "fail[ure] to adequately explain the chosen sentence" as a type of procedural error.[6] United States v. Dávila-González, 595 F.3d 42, 47 (1st Cir. 2010). But an adequate explanation does not require a court to articulate "why it eschewed other suggested sentences." United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014). Indeed, even where, as here, the district court chose a sentence different from the parties' joint recommendation, it is required only to explain "the sentence it ultimately selects." Burgos-Balbuena, 113 F.3d at 121 (citing United States v. Bermúdez-Meléndez, 827 F.3d 160, 165 (1st Cir. 2016)).

The district court provided a detailed explanation of the selected sentence. It focused on the seriousness of the offense, emphasizing that bank robberies are a "great . . . violation to the sense of community security." It also mentioned Turner's "remarkably similar criminal history," which included three previous bank-robbery convictions. These considerations led the court to conclude that a high-end guideline sentence was necessary to protect the public, afford adequate deterrence, and impose just punishment, even accounting for Turner's difficult

---

[6] We have not, however, always described it that way. See, e.g., United States v. Colón-Cordero, 91 F.4th 41, 50 n.4 (1st Cir. 2024). But even if we were to construe Turner's challenge as a substantive attack on his sentence, for the same reasons discussed here, it still would not provide a basis for relief.

upbringing, mental-health conditions, and substance abuse disorder. This was a sufficient explanation for a within-guideline sentence.

### d.    Allocution

Turner's last procedural claim is that the district court mistook statements he made during his allocution about his probation officer's failure to help him before the robbery as an effort to deflect responsibility for his crime. Turner insists that he mentioned the probation officer's actions merely to place his decision to rob the bank in context.

We disagree with Turner's contention that the district court misunderstood his allocution. It is of course true that "[a] defendant's acceptance of responsibility and his assertion of mitigating circumstances are not necessarily inconsistent or incompatible." United States v. Singh, 877 F.3d 107, 119 (2d Cir. 2017). And it is also true that a defendant may show remorse while explaining his reason for breaking the law, since "motivation for engaging in criminal conduct is unquestionably a proper consideration at sentencing." Id. at 120. Nevertheless, a court is not required to accept a defendant's explanation for why he committed a crime or why certain factors mitigated his criminal behavior. See, e.g., United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012).

The district court's statement that it did not accept that "probation's failings . . . led ineluctably to yet another bank robbery" does not suggest that the court did not understand Turner's point. Rather, the record shows the court simply disagreed with Turner. The court recognized that Turner may have felt "a sense of desperation" based on his perception that his probation officer did not sufficiently help him. And the court did not reject Turner's statements that he felt remorse for committing the robbery. But, based on Turner's prior record of almost identical offenses, the court concluded -- reasonably -- that Turner's response to his probation officer's actions did not justify his conduct, especially where there were "lower risk . . . ways" for Turner to obtain money. As the court viewed it, robbing a bank "represents something quite apart from . . . an addict trying to fund his habit."

In sum, in rejecting Turner's view about the relevance of the probation officer's actions to his crime, the district court understood Turner's point, it simply disagreed with certain aspects of it. That is not procedural error, and we thus reject Turner's allocution-based claims.[7]

---

[7] Turner notes in his brief that the district court, at one point, did "not allow" him to answer a question that the court posed to counsel about the content of his allocution. Turner does not, however, make any argument that the court violated his right to allocute. We deem any such argument undeveloped and therefore

- 24 -

## 2. Substantive Reasonableness

Turner also argues that the district court imposed a substantively unreasonable sentence. "Challenging a sentence as substantively unreasonable is a burdensome task in any case, and one that is even more burdensome where, as here, the challenged sentence" is within the undisputed advisory guideline range. United States v. Clogston, 662 F.3d 588, 592-93 (1st Cir. 2011). "A sentence is substantively reasonable so long as the sentencing court has provided a 'plausible sentencing rationale' and reached a 'defensible result.'" United States v. Sayer, 916 F.3d 32, 39 (1st Cir. 2019) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

Turner claims that his sentence was substantively unreasonable because the district court assigned excessive weight to his criticisms of the probation officer and the criminal justice system. We disagree. These considerations were not even mentioned by the court when it explained its sentencing rationale. To be sure, the court commented on Turner's attempt to connect the probation officer's actions to his decision to rob a bank. But, after explaining why it did not accept the proposed connection, the court proceeded to sentence Turner based on the nature of his

waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 25 -

offense, his prior record, and the pertinent § 3553(a) sentencing factors of just punishment, deterrence, and public protection.

Turner was before the district court for sentencing on his fourth bank robbery. Given a record replete with violent felonies, the district court's decision to sentence Turner at the top of the advisory guideline range was a reasonable outcome.

### C. Supervised Release Claim

Lastly, Turner claims that the district court committed a procedural error in failing to recognize its discretion to impose a revocation sentence concurrent with the sentences on the counts of conviction. See United States v. Reyes-Torres, 979 F.3d 1, 7 (1st Cir. 2020) (explaining that "treating the [sentencing guidelines] as mandatory" is a procedural error (quoting United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013))). Turner did not raise this argument in the district court. We therefore review it for plain error.

"[W]hen a supervised releasee 'transgresses the criminal law as well as the conditions of supervision, there is no legal impediment in sentencing [him] both as a criminal and as a supervised release violator.'" United States v. Tanco-Pizarro, 892 F.3d 472, 483 (1st Cir. 2018) (quoting United States v. Coombs, 857 F.3d 439, 451 (1st Cir. 2017)). And, in those circumstances, a chapter seven policy statement of the sentencing guidelines contemplates a consecutive sentence. U.S. Sent'g Guidelines

- 26 -

Manual § 7B1.3(f) (U.S. Sent'g Comm'n 2021) (stating that a "term of imprisonment imposed upon revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release"). Nevertheless, we have recognized that chapter seven policy statements, including § 7B1.3(f), are "advisory rather than mandatory." United States v. O'Neil, 11 F.3d 292, 301 n.11 (1st Cir. 1993). Thus, a court may impose a concurrent supervised release sentence. See Coombs, 857 F.3d at 450–51; United States v. Hurtado-Araujo, No. 98-1975, 1999 WL 529445, at *1 (1st Cir. June 8, 1999).

The record does not demonstrate that the district court believed that it was required to impose a consecutive revocation sentence. Before imposing sentence, the court recognized the advisory nature of the guidelines. In addition, Turner specifically requested that his revocation sentence run concurrently, and the government noted that "the Court is well within its discretion to sentence [] Turner to a consecutive term of two years or run it concurrently." Further, when imposing the consecutive revocation sentence, the court stated that it was doing so to impose additional punishment in recognition that "Turner committed [the robbery] while on federal supervised release,"

- 27 -

which it recognized as a factor that it "ha[d] to consider." The court's explanation that it was relying on sentencing considerations to impose the consecutive sentence demonstrates that the court appreciated its discretion to do otherwise.[8]

### III. CONCLUSION

For the reasons stated, we **affirm** the judgments.

---

[8] Turner also suggests that the revocation sentence was too harsh because the district court "gave insufficient weight to the fact that [he] lapsed . . . because of the burden of the pandemic." But, as already discussed, the court recognized Turner's drug addiction and vulnerability during the period just before his crime. It just did not consider the relapse and Turner's associated need to buy drugs as justifying his decision to rob a bank.